**David Lynn BLOUNT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–96–00009–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

June 5, 1997.

Rehearing Overruled July 23, 1997.

Cesare J. Galli, Jr., Friendswood, for appellant.

Alan Curry, Houston, for appellee.

Before SCHNEIDER, C.J., and O'CONNOR and HEDGES, JJ.

## OPINION

SCHNEIDER, Chief Justice.

David Lynn Blount, appellant, was charged by information with the misdemeanor offense of harassment. After a bench trial, appellant

was found guilty and sentenced by the court to 90 days confinement, probated for 18 months, and assessed a $700 fine. In two points of error, appellant asserts there was legally and factually insufficient evidence to support his conviction. We affirm.

## Facts

William Cliett, the complainant, worked as a tow truck driver for appellant during a 12-month period of time. On August 14, 1995, complainant quit his job with appellant and took a job with another tow truck driver. According to Cliett, appellant then began calling and harassing Cliett about his decision to change jobs.

Just after Cliett left his job, someone vandalized appellant's tow truck on two separate occasions while the truck was at a service station. The service station was just four doors down from Cliett's new employer. The vandal slashed all six tires four times, and painted and scratched appellant's name on the truck. The damage caused by the first act of vandalism cost about $2,200 to repair. Appellant reported the incident to the police and told them he suspected Cliett, who worked close to the station. About a week later, while the truck was at the same station, it was vandalized again. This time, the vandal broke the truck's windshield with a big rock, and dented the roof and fenders with the same rock.

Appellant felt Cliett was responsible for a number of reasons. First, the vandalism to the truck was not just random: the paint and scratches were made only to his name on the sides of the truck. Second, Cliett worked four doors down from the service station. Third, because the area of the service station is commercial, not residential, random violence is less likely. Fourth, it was the first act of vandalism. Fifth, during the six years he had worked as a wrecker driver, appellant's tow truck had never been vandalized. Last, appellant's son was dating Cliett's ex-wife from whom he was recently divorced.

On September 19, 1995, appellant phoned Cliett at home at about 11:00 p.m. Cliett testified he let his answering machine take the call because he thought it was appellant calling him again. The first call lasted only a few seconds; appellant cursed and hung up. The second call was longer; appellant accused Cliett of vandalizing his tow truck and called him profane names. At the end of the message, appellant said, "I want you to hit the street tomorrow because I'm going to be after you."

## Legal Sufficiency

■ In one point of error, appellant challenges the legal and factual sufficiency of the evidence to support his conviction. Appellant argues that the evidence was legally insufficient to support a verdict of guilty. Appellant contends he did not have the intent to harass, annoy, alarm, abuse, torment, or embarrass the complainant; that he did not call Cliett repeatedly; and that the telephone call appellant made to Cliett was not made in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another. We disagree for the following reasons.

When conducting a legal sufficiency review, we must view the evidence in the light most favorable to the verdict. *Martinez v. State,* 924 S.W.2d 693, 696 (Tex.Crim.App. 1996). Under this standard of review, the issue is whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 317–18, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *Martinez,* 924 S.W.2d at 696; *Green v. State,* 891 S.W.2d 289, 297 (Tex.App.—Houston [1st Dist.] 1994, pet.ref'd). If there is evidence that establishes guilt beyond a reasonable doubt, and if the trier of fact believes the evidence, we are not in a position to reverse the judgment on sufficiency of evidence grounds. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988); *Reece v. State,* 878 S.W.2d 320, 325 (Tex.App.—Houston [1st Dist.] 1994, no pet.).

To support a conviction for telephone harassment under TEX. PENAL CODE ANN. § 42.07(a)(4)(Vernon 1994), the State must prove beyond a reasonable doubt, (1) appellant had the intent to harass, annoy, alarm, abuse, torment, or embarrass complainant when he (2) made repeated telephone communications (3) in a manner reasonably likely

to harass, annoy, alarm, abuse, torment, embarrass, or offend another. TEX. PENAL CODE ANN. § 42.07(a)(4). The Penal Code provides that a person "intends" the result of his conduct if it is his conscious objective to cause the result. TEX. PENAL CODE ANN. § 6.03(a)(Vernon 1994).

The act of making repeated telephone calls is not, by its nature, criminal, nor is it a criminal act merely because of the circumstances during which it is conducted. *Ford v. State*, 870 S.W.2d 155, 160 (Tex. App.—San Antonio 1993, no pet.). The act of making repeated telephone calls is criminalized because the actor wants to cause the result of harassing or annoying his victim. *Id.* Thus, culpability is required as to the result of the conduct. Based on the statutory language of the offense, the legislature clearly intended for a defendant to be criminally responsible for the crime of telephone harassment *only* when he intended, that is, consciously desired, the result of his actions. *Id.* at 160–61. The intent of the accused may be inferred from circumstantial evidence. *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim.App.1996); *Wilkerson v. State*, 927 S.W.2d 112, 115 (Tex.App.—Houston [1st Dist.] 1996, no pet.). That is, the defendant's intent may be determined from his words, actions, and conduct. *Price v. State*, 410 S.W.2d 778, 780 (Tex.Crim.App.1967); *George v. State*, 841 S.W.2d 544, 547 (Tex. App.—Houston [1st Dist.] 1992, no pet.).

When viewing the evidence under the legal sufficiency standard, which requires us to view the evidence in the light most favorable to the verdict, we ignore the evidence favorable to the defendant. In such a review, we focus on the evidence that supports the judgment.

The first element challenged by legal sufficiency is whether the appellant made *repeated telephone calls.* Appellant made two calls on September 19th and at least two other calls sometime between August 14th and September 19th. On September 19th, appellant made the two calls recorded on Cliett's answering machine, which are the calls that are addressed in the complaint. As to the calls made the month before, Cliett testified appellant called on two separate oc-

casions after 11:00 p.m. to ask Cliett why he left his job. Cliett thought appellant was drunk when he made these calls. Although two calls in one night and two calls sometime during the month before are not many calls, under the legal sufficiency standard, we find there is sufficient evidence to support the finding of repeated calls.

The second element challenged by legal sufficiency is whether appellant made repeated telephone calls *with an intent to harass, annoy, alarm, abuse, torment, or embarrass.* The only information we have about the calls made between August 14th and September 19th was that appellant called after 11:00 p.m. to find out why Cliett left him to work for a competitor and that Cliett thought he was drunk. Cliett testified he told appellant not to call him late at night in an inebriated state. Nevertheless, appellant called twice on September 19th, and Cliett recorded both calls. The first recorded call consisted of a name calling, and then the appellant hung up. The second recorded call involved an abusive attempt to get Cliett to pick up the telephone so that appellant could talk with him. It was at the end of that call that the appellant said, "I want you to hit the street tomorrow because I'm going to be after you." Other courts have found statements such as "I'm going to get your ass," and "I'm going to get you" to be statements that are likely to alarm another. *Manemann v. State*, 878 S.W.2d 334, 338 (Tex. App.—Austin 1994, pet. ref'd). Under the legal sufficiency standard, we find there is sufficient evidence to support a finding of intent to harass, annoy, alarm, abuse, torment, or embarrass.

The last element challenged by legal sufficiency is whether appellant made the repeated telephone calls *in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.* Cliett, upon prompting by the assistant district attorney (ADA), testified he felt harassed, annoyed, alarmed, abused, and tormented by the September 19th call that ended with the threat. He said he felt threatened by the obscenity late at night in such a threatening manner. Under the legal sufficiency standard, we find there is

sufficient evidence to support the finding that appellant made the calls in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend Cliett.

We find that the evidence is legally sufficient to support appellant's conviction.

### Factual Sufficiency

Appellant argues that the evidence was factually insufficient to support his conviction. To conduct a factual sufficiency review, we do not view the evidence through the prism of in the light most favorable to the prosecution. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996); *Durand v. State*, 931 S.W.2d 25, 26 (Tex.App.—Houston [1st Dist.] 1996, no pet.). Instead, we consider all the evidence, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 129. Appellant claims that finding him guilty, when considering the entire record, would produce a manifestly unjust result and would shock the conscience of the court. We disagree.

Here, there is factually sufficient evidence showing that appellant made repeated calls to Cliett with the intent to harass him. In this record we have four telephone calls: two calls were made sometime in the month before September 19th, and two calls were made on September 19th. The earlier calls were not recorded by Cliett; however, Cliett testified to the nature of the calls, as follows:

Q: Can you tell me what happened around 11:00 p.m. [on September 19]?

A: Sir, around 11:00 p.m., the phone rang and I thought maybe it would be him because *I had previously told him on two occasions* not to call me that late at night, and so I allowed the answering machine to pick it up because I figured it would be him, sir.

Q: You said you previously told him not to call you. Why—had the two of you been having some personal difficulties?

A: Well, sir, just ever since the time I quit him and went to work for another wrecker service, he on occasions, he would call me after 11:00 o'clock at night and harassing me about, well you shouldn't

have quit me and on and on, and I said, David, please do not call me anymore in the condition you're in, because in my opinion, he was always drunk when he called me at that hour, and I said, if you can't call me at a decent hour in a decent condition, please don't call me, and I said, or—he goes, well, what are you going to do to me, and I says, well, you'll find out.

Q: So there had been some unfriendly communications between the two of you before September 19th?

A: Yes, sir, after I quit him, yes, sir.

(Emphasis added.)

Cliett's testimony regarding these two calls, coupled with the two recorded messages in the record, shows that appellant made repeated calls to the complainant. Although the earlier calls may have concerned Cliett and appellant's past working relationship, Cliett testified that he had asked appellant to discontinue the telephone calls, and appellant ignored this request. It is important to note, however, that the two recorded messages alone are sufficient to meet the repeated element of section 42.07. The first message, albeit short, consisted of calling the complainant an obscene name with the intent to harass and annoy. The second message—the repeated call—clearly was not intended as an attempt to discuss a problem with a former co-worker. It was yet another attempt by appellant to harass and annoy the complainant.

After viewing the facts without the prism of in the light most favorable to the prosecution, there is factually sufficient evidence showing that appellant made the calls in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend Cliett.

We overrule point of error one.

We affirm the trial court's judgment.

O'CONNOR, J., dissents.

O'CONNOR, Justice, dissenting.

I dissent from the panel's resolution of the appellant's challenge to the factual sufficiency of the evidence. David Lynn Blount, the appellant, challenges the factual sufficiency

of the evidence to support the court's finding that he was guilty of the misdemeanor offense of harassment.

## Factual Sufficiency

Under the factual sufficiency review, we consider all the evidence, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Appellant claims that finding him guilty, when considering the entire record, would produce a manifestly unjust result and would shock the conscience of the court. I agree.

The first element challenged by factual sufficiency is whether the appellant made *repeated telephone calls*. In this record, we have evidence of only four telephone calls: two calls were made sometime during the month before September 19th, and two calls were made on September 19th.[1] The earlier calls were not taped or described by Cliett. The only evidence of those calls was:

Q: Can you tell me what happened around 11:00 p.m. [on September 19]?

A: [Cliett]: Sir, around 11:00 p.m., the phone rang and I though maybe it would be him because *I had previously told him on two occasions* not to call me that late at night, and so I allowed the answering machine to pick it up because I figured it would be him, sir.

Q: You said you previously told him not to call you. Why—had the two of you been having some personal difficulties?

A: Well, sir, just ever since the time I quit him and went to work for another wrecker service, he on occasions, he would call me after 11:00 o'clock at night and harassing me about, well you shouldn't have quit me and on and on, and I said, David, please do not call me anymore in the condition you're in, because in my opinion, he was always drunk when he called me at that hour, and I said, if you can't call me at a decent hour in a decent condition, please don't call me, and I said, or—he

goes, well, what are you going to do to me, and I says, well, you'll find out.

Q: So there had been some unfriendly communications between the two of you before September 19th?

A: Yes, sir, after I quit him, yes, sir.

(Emphasis added.)

The majority considers the two calls made sometime the month before, which were characterized by Cliett as "unfriendly communications," as part of the repeated element in the harassment of Cliett. I disagree.

The two earlier calls were made after Cliett left his job with the appellant and the month before the two calls in the indictment. The apparent topic for conversation in those calls was about *leaving his job with the appellant to compete with him.* Those calls were not related to the same complaint as those in the September 19th calls, which involved *vandalism to appellant's truck.* Thus, we should not consider the earlier telephone calls as part of a series of calls made with the intent to harass. If we separated the earlier calls from the September 19th calls, we would only have two calls to consider.

I would find that the "repeated" element requires more than two calls between people who have known and worked with each other for a number of years, particularly when the relationship ends and one party wants to discuss a problem that resulted in the termination of the relationship. *See e.g., Ford v. State*, 870 S.W.2d 155, 157, 161 (Tex.App.—San Antonio 1993, pet. ref'd) (no evidence that repeated telephone calls, in which defendant identified himself and tried to resolve a relationship, were made with intent to harass); *Bader v. State*, 773 S.W.2d 769, 770 (Tex.App.—Corpus Christi 1989, pet. ref'd) (repeated calls involved 15 calls in one day, 2 calls next day, and 12 calls next day). I would sustain the challenge to the element of "repeated" telephone calls.

The second element challenged by factual sufficiency is whether the appellant made repeated telephone calls *with an intent to*

---

1. Cliett said the appellant called him after he quit and went to work for a competitor on August 14, 1995; he said the calls probably started on August 16. The incident made the basis of the complaint was on September 19, 1995.

*harass, annoy, alarm, abuse, torment, or embarrass.* For this part of the review, we should look to the substance of the two calls made on September 19th.

In the first call on the night of September 19th, the appellant demanded that Cliett pick up the phone; when Cliett did not answer, the appellant used curse words and hung up. Cliett, a former U.S. Marine sergeant, admitted he uses curse words himself. In the second call, which occurred a few minutes later, the appellant berated Cliett for not picking up the telephone and for damaging his tow truck, called him obscene names, and ended the call with an oblique threat. The second call on September 19th was the only call which Cliett claimed the appellant alarmed him in any way. The most that can be said about the first call, in which the appellant cursed and hung up, was that it was mildly annoying. One mildly annoying call and one alarming call are factually insufficient to support the finding of guilt.

Under the factual sufficiency challenge, I would find the appellant did not make "repeated" calls with the intent to harass, annoy, alarm, abuse, torment, or embarrass. I would reverse and remand the judgment for a new trial.