NO. 07-00-0382-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

AUGUST 20, 2001

______________________________

EVE F. GREENER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;

NO. 98-460869; HONORABLE MARVIN F. MARSHALL, JUDGE

_______________________________

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

In four issues, appellant Eve F. Greener challenges her conviction of the misdemeanor offense of harassment and the jury-assessed punishment of 45 days confinement in the Lubbock County Jail and a fine of $1,500.  In those issues, appellant contends 1) because there was no evidence of the necessary elements of the charged offense, the trial court erred in refusing to grant her motion for an instructed verdict, 2) there was insufficient evidence to support the jury’s guilty verdict, 3) by overruling appellant’s objection to a witness who read directly from a police report which was neither admissible nor admitted into evidence, the trial court abused its discretion, and 4) the trial court abused its discretion by overruling her objection to the State’s reference to the fact appellant did not testify in her own defense.  Disagreeing that reversal is required, we affirm the judgment of the trial court.

As we have noted, in her first two issues, appellant challenges the legal and factual sufficiency of the State’s evidence to sustain the conviction.
(footnote: 1)  The standards by which we review the sufficiency of the evidence are well known, and we will not recite them again.  
See Jackson v. Virginia
, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); 
Johnson v. State
, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996).  However, in making our review, we must remember that the trier of fact is the sole judge of the weight and credibility of the evidence, and we may not substitute our judgment for that of the jury.  
Santellan v. State, 
939 S.W.2d 155, 165 (Tex.Crim.App. 1997).

The evidence shows that appellant was the former mother-in-law 
of John Igo, who, at the time of the alleged offense, was married to Corina Gomez, the victim of the alleged harassment.  Appellant’s daughter, Igo’s first wife, had been murdered in her home, and appellant apparently believed Igo was involved in the murder.  Based upon a complaint that they were receiving harassing telephone calls, Lubbock Police Corporal Greg Stevens went to the Igo’s home and was told that they had an answering machine containing some recorded phone messages.  Stevens was informed that some person had called ten times and left eight messages.  After listening to the recorded calls, Stevens determined that the voice on the eight messages was the same.

The first recorded message was received on June 21 at 7:29 a.m. by a caller who represented herself as appellant.  The message itself, however, was incoherent.  The second call was at 7:31 a.m. with the caller asking why Corina named her daughter with a non-Mexican name.  The third call was at 7:36 a.m., and the caller said Igo had cheated her out of a boat.  The fourth call was at 7:37 a.m. and the caller asked if Corina was going to “get” her for calling.  The fifth call occurred at 8:12 a.m., and the caller spoke about a shirt of hers on which she said Igo had spilled hot sauce. The sixth call was about 8:14 a.m. and the caller talked about a house at “the” lake.  The seventh message was at 8:17 a.m., and the caller accused Igo and Corina of “food scams, drugs, stolen merchandise, etc.”  The eighth call came some two minutes later, and the caller talked about making money on pool and about “Mohawk,” her daughter who was formerly married to Igo.

Stevens averred that there were no tapes of the calls to play because the machine was digital.  He did not remember if the Igos’ phone had caller ID, but because he had not made a note that it did, he assumed it did not.  Stevens also did not know if the Igos ever told appellant that her calls were not welcome.  Stevens averred that he was concerned about the second call in which the caller talked abut the Igos’ daughter in a racial context.  The Igos told Stevens that appellant had been harassing them for about 15 years and that she had threatened Corina’s life.  Stevens checked the police records and discovered that the Igos had made several reports about harassment by appellant.  Stevens also said that he was told of two additional calls from appellant on June 21, one at 4:49 p.m. when no message was left, and another call at 5:18 p.m. during which appellant told Corina she had only 13 more days to live.

Igo testified that he had been married to Corina for 15 years.  During that time, he averred that appellant had made thousands of phone calls, threatened their lives, referred to his wife’s ethnicity, driven around his house numerous times, and protested his application for a license for a liquor store.  He also averred that appellant had talked to his daughter on the phone and told her her father was not any good.  He had called the police on several occasions and when he did so, the calls would only cease for three or four months afterward.  Igo said that the messages she left annoyed, offended, and tormented him.  He admitted that once in a restaurant when appellant called him “a son of a bitch,” he poured hot sauce on her.  He also said he thought that on June 21, 1998, the answering machine they owned did have removable tapes.

Corina likewise swore that they had received many phone calls from appellant over the last 15 or 16 years. She averred that some of the calls threatened her life or her daughter’s life and accused her of living with a murderer.  On June 21, the day in question, she and her husband had returned from a weekend at a lake and discovered they had 27 calls from appellant on the answering machine.  She said that because the answering machine was digital, it had no tapes. Corina also averred that although she did not know appellant personally, she had caller ID, which showed appellant’s name and that the voice on the phone is the same each time.  There were two messages left on June 21 to Corina’s daughter Ashley with the other messages being left the day before.  Corina also identified some tapes of appellant’s calls made in earlier years when the answering machine she used had digital tapes.  Portions of those earlier tapes were played to the jury.

A person commits the offense of harassment if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.  Tex. Pen. Code Ann. § 42.07(a)(4) (Vernon Supp. 2001).   In contending the evidence is legally insufficient to sustain that offense, appellant argues that Corporal Steven’s testimony as to the content of the calls shows that on their face, they were not made in a manner likely to harass, annoy, alarm, abuse, torment, or embarrass Corina.  She also contends that no more than two of the calls fall within the definition of harassment and they are insufficient to show that such phone calls were repeatedly made.

In considering this argument, the decision in 
Blount v. State
, 961 S.W.2d 282 (Tex. App.–Houston [1
st
 Dist.] 1997, pet. ref’d),  is helpful.  In that case, a harassment complaint was made with respect to two telephone calls made on September 19, 1995. There was also evidence that two other phone calls had been made by the defendant sometime between August 14 and September 19 after 11:00 p.m. asking the complainant why he had left his job with the defendant to work for a competitor.  On both occasions, the complainant told the defendant not to call him late at night when the defendant was drunk. In his first call on September 19, the defendant merely called the complainant some names and then hung up.  On the second call, the defendant asked the complainant to pick up the phone and, at the end stated, “I want you to hit the street tomorrow because I’m going to be after you.”  
Id.
 at 284.  The complainant testified that as a result of the last September 19 call which ended with the threat, he felt harassed, annoyed, alarmed, abused, and tormented.  The appellate court found that evidence legally sufficient to show that the calls were made in a manner that violated the statute.  
Id.
 at 284-85.  Additionally, the court found that the evidence of the two September 19 calls was factually sufficient because, during the first call, the defendant used an obscenity with the intent to harass and annoy, and the second call was not, as the defendant argued, an attempt to discuss a problem with a former employee, but was rather an attempt to harass and annoy the complainant.  
Id. 
at 285.

In the instant case, the evidence showed there were eight calls made within a 50- minute period with some of them only minutes apart.  The calls covered a variety of subjects, including one with incoherent rambling and another that a law enforcement officer considered alarming because of the racial reference about the complainant’s daughter.  Still another call accused the complainant’s husband of cheating the caller out of a boat, and  another accused both the Igos of a variety of crimes.  Moreover, the caller’s inquiry in one of the calls if the recipients were going to “get” her was an indication that she knew the calls were unwelcome.  Additionally, there was evidence that appellant had made a number of calls over a 15-year period, some of which included threats on the life of the complainant. There was still more evidence that the Igos had complained to the police on previous occasions about those calls.  Corina also testified that she felt tormented, offended, embarrassed, annoyed and harassed by the calls.

While there may be some conflicting evidence as to the type of answering machine Corina possessed, the number of calls actually made on June 21, and the subject matter of the calls, any such conflicts were well within the province of the jury to resolve.  We believe the evidence is both legally and factually sufficient to sustain the jury’s verdict.  Appellant’s first two issues are overruled.

In her third issue, appellant argues the trial court erred in permitting Stevens to read from his police report. She contends that report was neither admissible nor was it received into evidence.  She argues that this evidence was inadmissible hearsay without any exception to the hearsay rule because it was not offered as recorded recollection and because police reports are specifically excluded by Rule of Evidence 803(8)(B).  She also posits that the court erred in overruling her objection that the report was not the best evidence of the allegations against her because the State failed to produce the answering machine with the recordings which, she reasons, would be the best evidence of the alleged transgressions.

The State responds that appellant’s issue was not preserved by a specific, timely trial objection.  More specifically, it argues that appellant’s trial objection does not comport with her appellate complaint.  Appellant’s trial objection was “to the officer reading from anything that hasn’t been admitted into evidence.”  That is not a hearsay objection.
(footnote: 2)  It is well established that an appellant’s trial objection must comport with his appellate complaints.  
Fuller v. State
, 827 S.W.2d 919, 928 (Tex.Crim.App. 1992), 
cert. denied
, 509 U.S. 922, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993); Tex. R. App. P. 33.1(a)(1).

Moreover, even if a proper hearsay objection had been made, the officer read from his report as to the date, time, and the content of the calls.  In 
Barrera v. State
, 978 S.W.2d 665 (Tex.App.–Corpus Christi 1998, pet. ref’d), the court held that the notes made by a recipient of harassing telephone calls as to the remarks of the caller were not hearsay because they were not admitted for the truth of the matter asserted in those remarks, but were admitted to prove that such remarks were made and that they were of a nature intended to harass, annoy, alarm, abuse, torment or embarrass the recipient.  
Id
 at 668.  That rationale is applicable here.

We also note appellant’s objection to Steven’s testimony as to the contents of the messages on the basis that the best evidence of those statements would be to play the tape.  When she did so, the State responded that, because the messages were left on a digital message recording device that does not make a permanent record, there was no tape to introduce.  Appellant then objected that there was no “chain of custody.”  When that objection was overruled, appellant then objected, and now argues, that even if the testimony was otherwise admissible, the requirement of authentication or identification was a condition precedent to admissibility and no proper predicate in that regard had been laid.

Texas Rule of Evidence 901, which deals with this type of evidence, does require authentication or identification as a condition precedent to admissibility of evidence, but it does state that condition “is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.”  Telephone conversations may be authenticated by evidence that a call was made to the number assigned at the time by the telephone company to a particular person and, if the call is to a person, circumstances, including self-identification, that show that the person answering the call was the person called.  Tex. R. Evid. 901(b)(6)(A).  However, the rule makes it clear that this is only a suggestion and that it is not intended to limit the manner by which the authenticity of the conversation may be established.  Initially, with regard to the “chain of custody” objection, there was no physical object introduced into evidence.  Stevens read from the police report the information he had placed in that report, and the report was never introduced into evidence.

With regard to the objection concerning the authenticity of the telephone messages as being those from appellant, Stevens actually listened to the telephone messages at the residence of the complainant.  He testified that he examined the telephone answering machine at the residence, determined that it was digital, and that the date and time were set accurately.  Although Stevens himself had never before heard appellant’s voice, the complainant and her husband told the officer who the caller was and, on the first call, the caller identified herself as appellant.  She also spoke of things such as Igo spilling hot sauce on her shirt, which presumably very few people would know.  Stevens also testified that the voice was the same on all the calls he listened to.  Under this record, the trial judge did not abuse his discretion in admitting the testimony.  
See Herzing v. Metropolitian Life Ins. Co.
, 907 S.W.2d 574, 581 (Tex.App.–Corpus Christi 1995, writ denied); 
Liberty Mutual Insurance Co. v. Preston
, 339 S.W.2d 367, 370 (Tex.Civ.App.–San Antonio 1966, writ ref’d n.r.e.).  Appellant’s third issue is overruled.

In her fourth issue, appellant asserts that the trial court reversibly erred in overruling her objection to a reference by the State to her failure to testify.  The State responds that because appellant failed to cite to the specific portion of the record in which the alleged remark was made, it is impossible to determine if error occurred.  It is the rule that when an appellant fails to cite the portion of the record in which an alleged error occurs, nothing is preserved for appellate review.  
Bell v. State
, 620 S.W.2d 116, 126 (Tex.Crim.App. 1980); Tex. R. App. P. 38.1(h).  Appellant’s fourth issue is overruled.

In summary, all of appellant’s issues are overruled, and the judgment of the trial court is affirmed.

John T. Boyd

 Chief Justice

Do not publish.

FOOTNOTES
1:
The defense rested after presentation of the State’s case.

2:
Appellant does cite some portions of the record that show she made hearsay objections to Stevens stating what was told to him about the ninth and tenth calls that he had not heard.  However, there is no indication in the report that the officer was reading from his record at the time of the objections.