# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00802-CR

**Margaret Rose Haule, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 1 OF CALDWELL COUNTY
NO. 31648, HONORABLE EDWARD L. JARRETT, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury found Margaret Rose Haule guilty of the offense of harassment. *See* Tex. Pen. Code Ann. § 42.07(a)(4) (West 2003). The court assessed punishment at 180 days in jail and a fine of $500. Imposition of sentence was suspended and Haule was placed on community supervision for a term of 24 months. Haule appeals this judgment contending that the evidence was legally and factually insufficient to support her conviction and that she is entitled to a new trial because a portion of the reporter's record was lost or destroyed. We affirm the conviction.

### BACKGROUND

Haule worked as a receptionist and clerk at the Texas State Board of Dental Examiners. Her direct supervisor was the Board's general counsel, but Haule also answered to

interim executive director Mei Ling Clendennen.[1]  Mei Ling testified that Haule's work performance was inadequate.  Haule would transfer calls to the wrong department and would read magazines at the front desk.  On several occasions Mei Ling asked Haule to stop reading magazines and to study the telephone manual to become more proficient at transferring calls.  On June 25, 2002, Haule created a disturbance at work by complaining loudly that Mei Ling was harassing her.  Mei Ling fired Haule the following day in the presence of the director of personnel and the Board's general counsel.

In August 2002, Mei Ling's mother-in-law, Margie Clendennen, received a telephone call at her home asking for Mei Ling.  Margie replied that her daughter-in-law was not there and hung up the phone.  A few days later, the same caller phoned again, asking for Mei Ling.  When Margie asked to take a message, the caller replied, "Tell her to stop sleeping with my husband."  Margie testified that, at the time, she thought the call was a "weird joke."

The caller phoned again in mid-November.  Margie answered the phone and the caller asked her to convey a message to Mei Ling:

> [S]top lying about retiring; that she was being fired because everyone knew about the funds that had been misappropriated and the fraud; and that Mei Ling was not rich like she was claiming to be; all the jewelry she wears is fake. . . .  Just tell her that she needs to stop lying about everything.  We know she is not rich and she lives in a trailer park in Dale.

---

[1]  Because several of the witnesses share the last name Clendennen, we will use first names to avoid confusion.

2

The caller identified herself as Cynthia Zuniga.[2] Margie testified that this call made her "a little angry" and "even a little scared."

On November 27, 2002, the caller phoned while Mei Ling's husband Millard Clendennen was visiting his mother Margie. Margie recognized the voice and handed the phone to Millard. The caller asked Millard if he was aware that Mei Ling's mother was involved in illegal activity in Asia. Millard testified that he identified the voice as Haule and replied, "Well Maggie, why do you care? Because we don't."[3] The caller then hung up the phone. About an hour later, the caller phoned on Margie's business line. The caller said, "Just tell Mei Ling I am glad she fired me," and hung up. Margie testified that this last call upset her because she feared the caller would interfere with her business. Margie was positive that the same person made all of the phone calls and described the voice as deep with a tiny bit of an accent. The Clendennens reported the phone calls to the Caldwell County Sheriff's Office on December 2, 2002, and a warrant was issued for Haule's arrest in May 2003.

---

[2] Zuniga also worked at the Texas Board of Dental Examiners. At trial, she testified and denied making the phone calls.

[3] Millard explained that he recognized the voice because he had met Haule while visiting his wife at the Texas Board of Dental Examiners. Haule challenged the credibility of Millard's testimony on cross-examination by pointing out that Millard had failed to mention in his statement to the police that he had met Haule before.

## DISCUSSION

**Legal and Factual Sufficiency**

In her first two issues, Haule challenges the legal and factual sufficiency of the evidence supporting her conviction for harassment. Haule was convicted of violating the following statutory provision:

> (a) A person commits an offense if, with the intent to harass, annoy, alarm, abuse, torment, embarrass, or offend another, he:
>
>   (4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another. . . .

*Id*. Haule contends that there is legally and factually insufficient evidence (1) that she was the person who made the phone calls or (2) that she intended to harass, annoy, alarm, abuse, torment, embarrass, or offend.

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (legal sufficiency); *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004) (factual sufficiency); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981) (legal sufficiency). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin*, 614 S.W.2d at 159 (citing *Jackson*, 443 U.S. at 318-19). In a factual sufficiency review, all the evidence is considered equally,

4

including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference still must be accorded the fact-finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). The evidence will be deemed factually insufficient to sustain the conviction if the evidence of guilt, considered alone, is too weak to support a finding of guilt beyond a reasonable doubt, or if the strength of the contrary evidence precludes a finding of guilt beyond a reasonable doubt. *Zuniga*, 144 S.W.3d at 484-85. In conducting a legal or factual sufficiency review, we consider all the evidence, rightly or wrongly admitted. *See Camarillo v. State*, 82 S.W.3d 529, 537 (Tex. App.—Austin 2002, no pet.).

Haule first contends that she was only identified as the caller in one phone call and, therefore, the evidence is legally insufficient to establish guilt. *See Hine v. State*, 622 S.W.2d 872, 874 (Tex. Crim. App. 1981) (legally insufficient evidence that Hine made harassing phone call). The fact that Margie Clendennen was not able to independently identify the voice she heard on the phone does not render the evidence as a whole insufficient to prove that Haule was the caller:

> The identity of a telephone caller may be established by self-identification of the caller coupled with additional evidence such as the context and timing of the telephone call, the contents of the statement challenged, internal patterns and other distinctive characteristics, and disclosure of knowledge and facts known peculiarly to the caller. . . . Proof of the identity of a telephone caller is for the fact finder to determine, and testimony of the recipient of a call that he recognized the voice of the caller is competent to establish the identity of the caller, when the recipient at either a prior or subsequent time has been in the caller's presence and heard him speak.

*Manemann v. State*, 878 S.W.2d 334, 338 (Tex. App.—Austin 1994, pet. ref'd). Although Haule never identified herself by name, Millard Clendennen testified that he recognized Haule's voice from meeting her at his wife's workplace. Margie also heard Haule's voice prior to handing Millard the phone, and Margie testified that the voice was the same on each of the five phone calls. Moreover, Haule provided specific information that confirmed her identity. In her final phone call, she asked Margie to tell Mei Ling, "I am glad she fired me." Mei Ling testified that Haule was the only person she had ever fired. Viewing the evidence in the light most favorable to the verdict, we hold that there was legally sufficient evidence that Haule had made all five phone calls to the Clendennen home.

Because there is legally sufficient evidence that Haule placed all five phone calls, we will consider the substance of all of the calls in determining whether Haule made them with the requisite intent. The act of making repeated phone calls is only criminal if "the actor wants to cause the result of harassing or annoying his victim." *Blount v. State*, 961 S.W.2d 282, 284 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). The intent of the accused may be determined through circumstantial evidence, considering that person's words, actions, and conduct. *Id*. In this case, Haule began with an innocuous call in which she asked for Mei Ling and then hung up. In her next call, she accused Mei Ling of adultery. In her later calls, Haule stated that Mei Ling was lying, stealing from her workplace, and that Mei Ling's mother was involved in criminal activity in Asia. Additionally, Haule called Margie Clendennen's business phone as well as her home. Viewing this evidence in the light most favorable to the State, we hold that it was sufficient to establish Haule's intent to harass, annoy, alarm, abuse, torment, embarrass, or offend.

6

Haule also contends that there was factually insufficient evidence that she repeatedly made phone calls to the Clendennen home with the intent to harass, annoy, alarm, abuse, torment, embarrass, or offend. Viewing the evidence neutrally, we hold that the jury could reasonably have found beyond a reasonable doubt that Haule made all of the phone calls because (1) Margie testified that the same person made all five calls, (2) Haule was identified by Millard in one of the phone calls, and (3) Haule provided identifying information by stating that she was glad Mei Ling fired her. *See Manemann*, 878 S.W.2d at 338. Although Millard may not have included in his statement to the police that he had met Haule previously, the jury heard this testimony and found Millard credible. *See Johnson v. State*, 23 S.W.3d at 9 (deference to jury determination of credibility).

In arguing that the evidence is factually insufficient to establish that she intended to harass, annoy, alarm, abuse, torment, embarrass, or offend, Haule points to Margie's testimony that she was not upset by the first calls and emphasizes the fact that Haule made no threats and did not use obscene language. She echoes the dissenting opinion in *Blount*, which stated that "[o]ne mildly annoying call and one alarming call are factually insufficient to support" a conviction for harassment. 961 S.W.2d at 287.[4] However, the use of threats or obscenities are unnecessary to commit the offense of harassment. *See Bansal v. State*, 169 S.W.3d 371, 376 (Tex. App.—Beaumont 2005, pet. struck) (repeated calls making embarrassing and offensive accusations were legally sufficient evidence of harassment). A person commits an offense even if the intent of the phone calls was only to annoy the recipient. *See* Tex. Pen. Code Ann. § 42.07(a)(4).

---

[4] In *Blount*, the defendant made several calls to his former employer over the course of one month. *See Blount v. State*, 961 S.W.2d 282, 285 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). The calls included coarse language and a threat. *Id*. at 284.

Although Margie minimized the impact of the August phone calls, she testified that Haule's later, more detailed calls accusing Mei Ling and her mother of criminal activity upset and frightened her. Furthermore, Haule's intent in making the calls is best determined from her own words, not the recipient's reaction. *See Blount*, 961 S.W.2d at 284. Haule placed repeated calls to the Clendennen residence in which she made embarrassing and offensive accusations against Mei Ling and her mother. Viewing all of the evidence equally, we do not find the evidence so weak, or the contrary evidence so strong, as to preclude a finding that Haule's phone calls were made with the intent to annoy, alarm, abuse, torment, embarrass, or offend. Finding the evidence legally and factually sufficient, we overrule Haule's first and second issues.

**Lost or Destroyed Reporter's Record**

In her third issue, Haule asks this Court to order a new trial because a portion of the reporter's record was lost due to a corruption of the court reporter's computer file. The lost record consists of a significant portion of the voir dire examination. Rule of appellate procedure 34.6(f) states that an appellant is entitled to a new trial:

(1) if the appellant has timely requested a reporter's record;

(2) if, without the appellant's fault, a significant portion of the court reporter's notes and records has been lost or destroyed or—if the proceedings were electronically recorded—a significant portion of the recording has been lost or destroyed or is inaudible;

(3) if the lost, destroyed, or inaudible portion of the reporter's record . . . is necessary to the appeal's resolution; and

(4) if the lost, destroyed or inaudible portion of the reporter's record cannot be replaced by agreement of the parties. . . .

Tex. R. App. P. 34.6(f).  Assuming without deciding that all of the technical requirements of rule 36.4(f) are met, Haule has not shown that the lost portion of the reporter's record is necessary for the resolution of her appeal.  Haule asserts that the lost reporter's record has prevented her from raising a claim that she was denied the effective assistance of counsel during voir dire.[5]  She relies on *Kirtley v. State*, 56 S.W.3d 48, 52 (Tex. Crim. App. 2001), in which the court of criminal appeals held that the absence of a transcript of the punishment hearing after a guilty plea prevented the resolution of Kirtley's claim of ineffective assistance of counsel.  In that case, Kirtley specified the grounds he believed supported his claim of ineffective assistance of counsel.  *See Kirtley v. State*, No. 05-99-00236-CR, 2000 Tex. App. LEXIS 3327, at *4 (Tex. App.—Dallas May 19, 2000) (counsel ineffective because punishment exceeded plea agreement), *vacated and remanded,* 56 S.W.3d at 52.  Although Haule speculates as to a number of possible errors that could have been made by her trial counsel, she does not actually assert that her counsel performed deficiently in any way.

---

[5]  Haule complains that, without the lost portion of the reporter's record,

> It cannot be determined . . . what questions Appellant's trial counsel asked the venire members during voir dire, whether those questions might have impacted the evidentiary issues discussed in Issues 1 or 2, whether there were jurors who might have convicted Appellant of making repeated calls without the intent to harass, annoy, alarm, abuse, torment, or embarrass another, or whether the venire members were asked how many telephone calls were required for the State to prove the "repeated" element of this offense.  It also cannot be determined on this incomplete record whether trial counsel should have made challenges for cause besides the withdrawn challenge to venire member Williams after questioning at the bench. . . .  Nor does the incomplete record show the racial makeup of venire . . . .  Had there been no African-Americans in the venire, a challenge to the array should have been made at voir dire for a violation of Appellant's Sixth Amendment right to a cross section of the community in her jury venire. . . .

9

The court of criminal appeals rejected a similar argument in *Routier v. State*, 112 S.W.3d 554, 571 (Tex. Crim. App. 2003). Routier complained that a missing portion of the record, including the court's instructions to prospective jurors, was "necessary to her appeal because prospective jurors received preliminary instructions that may have been erroneous." *Id*. The court of criminal appeals responded:

> The appellant includes no point of error regarding the instructions given to prospective jurors. The suggestion that instructions *may* have been erroneous, without more, does not make that portion of the record necessary to her appeal.

*Id*. As in *Routier*, Haule asserts only that there *may* have been error. When an appellant merely speculates that error might have been recorded in the lost portion of the reporter's record, she has not established that the record "is necessary to the appeal's resolution." Tex. R. App. P. 34.6(f)(4); *see also Routier*, 112 S.W.3d at 571. We overrule Haule's third issue.

## CONCLUSION

Having overruled all of Haule's issues, we affirm the judgment of conviction.


Bea Ann Smith, Justice

Before Justices B. A. Smith, Patterson and Pemberton

Affirmed

Filed: January 26, 2006

Do Not Publish