Opinion issued February 25, 2010



 














In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-09-00256-CR
__________
 
GOBIN RAMROOP, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the County Court at Law No. 1
Brazoria County, Texas
Trial Court Cause No. 164,811
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Gobin Ramroop, guilty of the offense of harassment,



and the trial court assessed his punishment at 180 days confinement. In two issues,
appellant contends that the evidence is legally and factually insufficient to support his
conviction.  
          We affirm.  Factual BackgroundValerie Immore, the complainant, and the owner and operator of two yoga
studios, testified that on January 10, 2008, she received a telephone call from
appellant, who identified himself as “Govinda Vishnu.” He told the complainant that
he was looking for an opportunity to offer yoga classes and train yoga teachers. The
complainant, who was looking for assistance in teaching yoga classes, set up a
meeting with appellant at one of her yoga studios. At the end of this initial meeting,
which lasted several hours, appellant touched the complainant in a manner that made
her uncomfortable. However, the complainant remained interested in working with
him and learning from him about certain aspects of yoga. Accordingly, the
complainant spoke with appellant by telephone two days later and told him that,
although she was interested in the possibility of becoming appellant’s yoga student
and allowing him to conduct yoga workshops, she wanted to ensure that he 
understood that she was not “romantically” interested in him. 
          During their next telephone conversation, appellant began insisting that the
complainant gather all of her teachers and students together, and he became “very
frustrated” when she refused. During subsequent telephone conversations in late
January 2008, appellant continued to insist that he meet all of the teachers and
students at the yoga studio. In the first week of February 2008, the complainant went
on a trip and, when she returned, appellant “reprimanded” her for not meeting with
him, assembling her teachers and students for him, and staying in contact with him. 
He became “very irritated” with the complainant and began telling her that she was
teaching yoga incorrectly and that he would correct her teaching style. 
          The complainant subsequently agreed to let appellant observe her yoga classes,
and, the first time that he observed her class, he told the students that the complainant
had been teaching yoga “incorrectly.” When he attended another class later that week
at the studio, at which the complainant was not present, appellant further criticized
the complainant’s teaching and solicited the students for a separate class that he
intended to teach. Appellant then called the complainant on the telephone, and the
complainant, who had learned what had happened, told appellant not to criticize her
in front of her students. After confronting appellant with this information, the
conversation with appellant became “very heated and ugly” and there was “a lot of
hang up and call back.” The complainant described appellant as “very upset and
angry.” Finally, the complainant told appellant that she was “done with all of this”
and told him goodbye. 
          Nevertheless, appellant called the complainant back, and she again told him
that she did not want to talk to him anymore. Appellant then told the complainant,
“No woman can use this authority on me; You have no authority over me.” After this
discussion, appellant made repeated telephone calls to the complainant, which she did
not answer initially. However, on the fifth telephone call, the complainant answered. 
Appellant continued to engage in conversation that was “real ugly,” and the
complainant felt “frazzled” and “unraveled” and hung up the telephone.  
          The complainant subsequently began receiving “hate mail” from appellant in
which appellant expressed that he “hated” her and stated, “How dare you try to
reprimand me. You have no authority over me.” At about the same time that she
received this hate mail, appellant sent the complainant flowers and a letter for
Valentine’s day with a card that said, “I love you.” The complainant called the florist
and learned that, when appellant had ordered the flowers, he had told the florist that
he and the complainant were “so in love.”
          The complainant then wrote a “cease and desist letter” in which she instructed
appellant to no longer contact her. Yet, appellant “called many times throughout the
weekend.” The complainant did not answer these telephone calls, but appellant left
“several messages.” On Sunday morning of that same weekend, the complainant
answered the telephone “by mistake,” and appellant told the complainant that he
would be at the studio the following morning “to observe classes,” “as if nothing had
happened.” Upon the complainant’s questioning, appellant admitted to sending the
hate mail, but he explained that he had just been angry. The complainant again told
appellant not to contact her or send her letters, but appellant continued to insist that
he and the complainant had “business to do” together. 
          Thereafter, the complainant again refused to take appellant’s telephone calls
or accept his letters, but appellant sent the complainant legal documents threatening
to sue her. Appellant also sent a threatening letter to the complainant’s home, which
prompted the complainant to contact the Pearland Police Department for assistance. 
She also began to look through documents that appellant had sent her, and she learned
that appellant’s legal name was different than the name that he had given her. The
complainant continued to receive letters from appellant, and although she also
blocked appellant’s telephone number from her cellular telephone, she continued to
get multiple “unavailable” and “anonymous” telephone calls. The complainant
considered appellant’s telephone calls, which were placed at “all hours,” to be
alarming. She also felt that she, her business, her students, and her family were being
threatened by appellant’s contacts. In fact, she had received telephone calls from
appellant after she had sent to him the cease and desist letter, and she was frightened
by appellant’s telephone calls. 
          The State introduced into evidence multiple letters that appellant had sent to
the complainant. In one letter, which appellant had sent to the complainant shortly
before a court hearing in which the complainant had sought a restraining order,
appellant made numerous disturbing statements, including, “You love me and you
know it” and “You have something I want. Keep it safe.” In other letters, appellant
stated, “You do not have the authority to admonish me”; “If you should ever talk to
me like this one more time, I will do something about it”; “You are not competent
neither are you qualified to teach yoga”; “you are making me dislike you”; and “I
don’t trust you.” The State also introduced into evidence the complainant’s cease and
desist letter, in which she warned appellant to stop calling her and referred to a prior
telephone message left by appellant in which he threatened her business. 
          Pearland Police Detective C. Arnold testified that when he met with appellant
in the course of his investigation into the matter, appellant told Arnold that he was in
“a relationship more than a business relationship” with the complainant and admitted
that he had persisted in contacting the complainant via telephone and mail after
receiving her cease and desist letter and after she had told him to leave her alone. 
Appellant continued to attempt to contact the complainant because “he was in love
with her.” Arnold concluded that the complainant was in danger. Arnold also
testified that he had become aware of other situations involving appellant similar to
that between appellant and the complainant. 
          Appellant, who represented himself in the trial court, testified that the
complainant had given him a business card, which he believed gave him permission
to call her, and he had spent significant time in preparing to teach with the
complainant. Appellant asserted that he wrote nothing threatening in his letters to the
complainant, and although he admitted to calling the complainant five times in one
week, he denied calling the complainant at her home. Appellant also denied knowing
where the complainant lived or the location of her studio. On cross-examination,
appellant agreed that he did not cease all contact with the complainant after receiving
her cease and desist letter, but explained that he believed that he “had absolute
freedom to talk and write.” Appellant admitted that after the complainant told him
not to call anymore, he called her anyway, but he asserted that she asked for “some
time” to think. 
Standard of Review
          We review the legal sufficiency of the evidence by considering all of the
evidence in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)
(citing Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979)).
In doing so, we give deference to the responsibility of the fact-finder to fairly resolve
conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the
facts. Id. However, our duty requires us to “ensure that the evidence presented
actually supports a conclusion that the defendant committed” the criminal offense of
which he is accused. Id.
           In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury’s determination, i.e., that the
verdict seems “clearly wrong and manifestly unjust,” or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006). We
note that a jury is in the best position to evaluate the credibility of witnesses, and we
afford “due deference” to the jury’s determinations. Marshall v. State, 210 S.W.3d
618, 625 (Tex. Crim. App. 2006). Although we should always be “mindful” that a
jury is in the best position to pass on the facts and that we should not order a new trial
“simply because [we] disagree[ ] with the verdict,” it is “the very nature of a
factual-sufficiency review that . . . authorizes an appellate court, albeit to a very
limited degree, to act in the capacity of a so-called ‘thirteenth juror.’” Watson, 204
S.W.3d at 414, 416–17. Thus, when an appellate court can “say, with some objective
basis in the record, that the great weight and preponderance of the (albeit legally
sufficient) evidence contradicts the jury’s verdict[,] . . . it is justified in exercising its
appellate fact jurisdiction to order a new trial.” Id. at 417.
Legal and Factual Sufficiency
          In his two issues, appellant argues that the evidence is legally and factually
insufficient to support his conviction because the record “is very vague concerning
telephone calls” made to the complainant and there is no evidence regarding the
dates, number times, or content of the telephone calls or the identity of the callers. 
Appellant asserts that the evidence is legally and factually insufficient to establish
that he had the required criminal intent or that he was responsible for making the
complainant’s telephone ring repeatedly, which is the provision of the harassment
statute under which he was convicted. 
          “A person commits the offense of harassment if, with intent to harass, annoy,
alarm, abuse, torment, or embarrass another, he . . . causes the telephone of another
to ring repeatedly or makes repeated telephone communications anonymously or in
a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or
offend another.” Tex. Penal Code Ann. § 42.07(a)(4) (Vernon 2003). The mere act
of “making repeated telephone calls is not, by its nature, criminal, nor is it a criminal
act merely because of the circumstances during which it is conducted.” Blount v.
State, 961 S.W.2d 282, 284 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d). 
Rather, the making of repeated telephone calls is a criminal act if “the actor wants to
cause the result of harassing or annoying his victim.” Id. A defendant is “criminally
responsible for the crime of telephone harassment only when he intended, that is,
consciously desired, the result of his actions.” Id. The defendant’s intent “may be
inferred from circumstantial evidence,” including evidence of the defendant’s “words,
actions, and conduct.” Id.
          The complainant testified that, after discussing the possibility of a business
relationship with appellant, appellant’s behavior changed and he became very
frustrated and irritated, he reprimanded and criticized her, and he solicited her
students. After she confronted appellant during a telephone conversation, the
conversation became “very heated and ugly,” and there was then “a lot of hang up and
call back.” Because appellant was “very upset and angry,” the complainant finally
told appellant that she was “done,” and she ended the conversation. Appellant then
called her back, and although she again told him not to contact her further, he told her
that she had no “authority” to stop his calls, in part because she was a woman. 
Appellant subsequently continued to make telephone calls to the complainant. She
did not answer the first four of this series of telephone calls, but answered the fifth
telephone call, in which appellant engaged in a “real ugly” conversation, and the
complainant, feeling “frazzled” and “unraveled,” hung up her telephone. 
          Appellant then sent to the complainant correspondence expressing both love
and hate for her. Sufficiently disturbed by appellant’s behavior, she wrote to him a
“cease and desist letter” instructing him to stop all contact with her. Yet, appellant
“called many times throughout the weekend” and left “several messages.” The
complainant, who was purposefully avoiding answering her telephone, mistakenly
answered it on one occasion, and appellant, who was the caller, told her that he would
be at her studio the next morning to observe. The complainant again told appellant
to stop all contact, but he subsequently sent the complainant threatening
correspondence, which prompted her to seek assistance from the Pearland Police
Department. The complainant also blocked appellant’s telephone number on her
cellular telephone, but she continued to receive several “unavailable” and anonymous
telephone calls at “all hours.” She explained that she felt alarmed, frightened, and
threatened by appellant’s repeated telephone calls. 
          The State introduced into evidence several disturbing letters sent by appellant
to the complainant as well as the complainant’s cease and desist letter, in which she
referenced appellant’s threatening telephone calls and messages. Officer Arnold, who
interviewed appellant, testified that appellant admitted to him that he had contacted
the complainant by telephone after she had told him to stop and after having received
the cease and desist letter because “he was in love.” Arnold opined that appellant was
a danger to the complainant. Although appellant testified that he had not threatened
the complainant, his testimony was rife with inconsistencies. On cross-examination,
appellant conceded that he had contacted the complainant, including contact by
telephone, after receiving her cease and desist letter, explaining that he believed he
“had absolute freedom to talk and write.” 
          The testimony of the complainant, Officer Arnold, and appellant, along with
the documentary evidence, support the jury’s findings that, on the date charged,
appellant made repeated telephone calls to the complainant with the required criminal
intent. The complainant’s testimony reveals that it was appellant who repeatedly
called her because he left messages, which were threatening. The complainant also
testified that at one point she received a series of five telephone calls, and, when she
answered the fifth call, it was appellant who identified himself as the caller. The
complainant was alarmed and threatened by appellant’s repeated telephone calls and
contacts. 
          Although appellant denied intending to threaten or harass the complainant in
making the telephone calls, the jury was free to reject appellant’s testimony and find
that he lacked credibility. See Williams, 235 S.W.3d at 750. The State also presented
the jury with a significant amount of documentary evidence from which the jury could
have inferred appellant’s intent to harass and threaten the complainant. See Blount,
961 S.W.2d at 284. The jury could have reasonably concluded that the contents of
the documentary evidence established that appellant presented a danger to the
complainant. Although the State did not present evidence of the exact time and
number of each one of the telephone calls made by appellant to the complainant, the
State provided evidence of the time frame of the calls as occurring throughout
February 2008. The complainant also testified as to the content of the alarming
telephone calls. In sum, viewing all of the evidence in the light most favorable to the
verdict, we conclude that a rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Accordingly, we hold that the
evidence is legally sufficient to support appellant’s conviction.  
          Moreover, viewing all of the evidence in a neutral light, both for and against
the finding, we conclude that the evidence is not so obviously weak as to make the
jury’s verdict clearly wrong and manifestly unjust, nor is the proof of guilt against the
great weight and preponderance of the evidence. The jury was free to reject
appellant’s testimony that his telephone contacts with the complainant were made in
conjunction with a legitimate business relationship and instead reasonably find that
appellant intended to harass and alarm the complainant with his repeated telephone
calls. Accordingly, we hold that the evidence is factually sufficient to support
appellant’s conviction.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Jennings, Hanks, and Bland.

Do not publish. See Tex. R. App. P. 47.2(b).