Travis Keith **RICHARDSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 12–95–00147–CR.

Court of Appeals of Texas,
Tyler.

Feb. 28, 1997.

Rehearing Overruled March 18, 1997.

Discretionary Review Refused Oct. 22, 1997.

Odis R. Hill, Longview, for appellant.

C. Patrice Savage, William M. Jennings, Longview, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Appellant Travis Keith Richardson ("Appellant") was indicted and tried before a jury

for the third degree felony offense of manslaughter. However, the jury found him guilty of the lesser included offense of negligent homicide, a state jail felony. The jury affirmatively found that Appellant's vehicle was a deadly weapon, and assessed the punishment of a $10,000 fine and 10 years' imprisonment, all of which they found should be probated. Appellant assigns three points of error. We will **affirm.**

The evidence supporting the judgment shows that on November 27, 1994, Appellant and two passengers were drinking and riding in their vehicle around the city. At approximately 12:30 a.m., Appellant was driving at a high rate of speed, attempting to lose another vehicle. He ran a red light at the intersection of Bill Owens Parkway and Hawkins Parkway, striking Angela Lynn Locklear's ("Locklear") vehicle. The collision forced Locklear's car off the roadway and into a tree, causing Locklear's death. Appellant and one of his passengers fled, while another stayed at the scene.

In his first point of error, Appellant claims that the paragraph of the indictment alleging the use of a deadly weapon was not read to the jury and a plea obtained from the Appellant before the commencement of the punishment phase of the trial. Appellant points out that negligent homicide is a state jail felony. TEX. PENAL CODE ANN. § 19.05 (Vernon 1994). A state jail felony is punishable by confinement in a state jail facility for any term of not more than two years or less than 180 days and/or a fine of $10,000. However, punishment is increased to a third degree felony if the trier of fact finds that a deadly weapon was used during the commission of the offense. TEX. PENAL CODE ANN. § 12.35 (Vernon 1994). Therefore, he argues that since an affirmative deadly weapon finding in a state jail felony does not merely affect the amount of the assessed sentence that must be served, but also increases the sentence, it thereby serves as an enhancement provision. Consequently, the State was required to conform to Art. 36.01(a)(1) of the Texas Code of Criminal Procedure, which provides:

The indictment or information shall be read to the jury by the attorney prosecuting. When prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held as provided in Article 37.07.

TEX.CRIM. PROC.CODE ANN. § 36.01(a)(1) (Vernon Supp.1996). Appellant maintains that this "enhancement" portion of the indictment was not read to the jury at any point during the trial. Thus, since Appellant did not enter a plea to the allegation of the use of a deadly weapon, double jeopardy applies, and the court should not allow the State to retry this issue. Appellant cites *Turner v. State*, 897 S.W.2d 786 (Tex.Cr.App.1995) in support of his proposition that the mandatory provisions for reading enhancement paragraphs are not subject to harmless error analysis. In *Turner*, the court held that:

Because of the double jeopardy implications of a failing to comply with Article 36.01, and the potential for harm to a defendant's right to a fair punishment hearing and wasted judicial resources in future cases, it is not unreasonable, nor is it inconsistent with the purposes of the Code to require the state to strictly comply with the portion of Article 36.01 at issue here.

*Turner*, 897 S.W.2d at 789. Appellant requests this Court to remand to the trial court for a new punishment hearing consistent with a state jail felony, with special instructions that the State cannot seek an affirmative deadly weapon finding since jeopardy attached when the jury was impaneled and sworn. *Citing Proctor v. State*, 841 S.W.2d 1, 4 (Tex.Cr.App.1992) (en banc).

The State disagrees with Appellant's analysis, and maintains that the deadly weapon paragraph, along with the balance of the indictment, was read to the jury prior to the commencement of the guilt/innocence phase, and Appellant entered a plea of "not guilty" to this allegation. The State insists that this was sufficient notice to the Appellant that it was seeking a deadly weapon affirmative finding as required by *Ex parte Lewis*, 892 S.W.2d 4 (Tex.Cr.App.1994). The State also argues that the deadly weapon allegation was not made for the purposes of enhancement only, which would have limited its reading to the punishment phase. Additionally, the

State asserts that the wording of section 4(a) and 4(b) of article 37.07 of the Texas Code of Criminal Procedure suggests that the deadly weapon issue be submitted at the guilt/innocence stage so that the trial court will know which parole law instruction to give the jury during the punishment phase. And the State cites *Hill v. State*, 913 S.W.2d 581 (Tex.Cr. App.1996), in which the court held that it is the better practice to submit the deadly weapon special issue charge at the guilt/innocence phase, but finds no harm in submitting it at punishment. Further, the State contends that because the record reflects that the indictment was read and the Appellant pleaded "not guilty" prior to the beginning of trial, there is a presumption, which Appellant has failed to overcome, that the indictment (including the deadly weapon allegation) was in fact read to the jury and Appellant pleaded to it. The State points out that Rule 80 of the Texas Rules of Appellate Procedure provides the following, in pertinent part:

> The court of appeals shall presume that ... the defendant was arraigned; that he pleaded to the indictment ... unless such matters were made an issue in the court below, or it otherwise affirmatively appears to the contrary from the record.

TEX.R.APP. P. 80. We agree.

Appellant was indicted as to the following:

### Count I

recklessly cause the death of an individual, namely, Angela Lynn Locklear, by driving and operating an automobile into an automobile Angela Lynn Locklear was then and there driving and the defendant drove and operated said automobile into an intersection when he did not have the right of way, to-wit: a traffic control signal displayed a red light, indicating the traffic in the defendant's lane should stop, and the defendant failed to keep a safe look out, And it is further presented that the defendant used and exhibited a deadly weapon, to-wit: an automobile, during the commission and immediate flight from said offense.[1]

Evidence concerning whether the vehicle was a deadly weapon was introduced at the punishment stage of the trial, and an interrogatory on the issue was in the charge on punishment.

■ We recognize that traditionally, courts have not considered affirmative findings of the use of a deadly weapon as enhancement provisions for purposes of punishment. Under normal circumstances, an affirmative deadly weapon finding would not affect the assessment of punishment, but rather the amount of the assessed sentence that must be served. Stated another way, an affirmative deadly weapon finding does not normally increase a defendant's sentence, but only the time frame in which he is eligible for parole. *See Pachecano v. State*, 881 S.W.2d 537, 546 (Tex.App.—Fort Worth 1994, no pet.). At Appellant's trial, the deadly weapon allegation only became an enhancement after the jury found Appellant guilty of criminally negligent homicide, a state jail felony. TEX. PENAL CODE ANN. § 19.05 (Vernon 1994). It became an enhancement due to the following provision in the punishment range of state jail felonies:

> An individual adjudged guilty of a state jail felony shall be punished for a third degree felony if it is shown on the trial of the offense that:

> (1) a deadly weapon as defined by Section 1.07 was used or exhibited during the commission of the offense or during immediate flight following the commission of the offense, and that the individual used or exhibited the deadly weapon ...

If the Appellant had been found guilty of manslaughter, as stated in the indictment, instead of the lesser included offense, the finding of use of a deadly weapon would have been material only in determining eligibility for parole.

■ We agree with the State's position that the record does not support the Appellant's assertion that the indictment was not read in its entirety, and that the deadly weapon allegation was totally excluded. Ap-

---

1. Count II of the indictment, a charge of failure to stop and render aid and a criminal episode paragraph, were abandoned at trial. Such aban- donment is written in the margin of the indict- ment by the Court.

plication of Rule 80 requires that in order for Appellant to overcome the presumption that the indictment was read and the Appellant pleaded "not guilty" to the deadly weapons charge, the record must affirmatively show that the indictment in its entirety was not read, or trial counsel must have called the omission to the attention of the court. *See Hazelwood v. State*, 838 S.W.2d 647 (Tex. App.—Corpus Christi 1992, no pet.). Silence in the record does not amount to an "affirmative" showing. *State ex rel. State ex rel. Ownby v. Harkins*, 705 S.W.2d 788, 791 (Tex. App.—Dallas 1986, no pet.).

■ Additionally, we feel that a proper reading of Article 36.01(a)(1) means what it says when it states, *"When prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such conviction shall not be read until the hearing on punishment is held as provided in 37.07."* (emphasis added) TEX.CRIM. PROC.CODE ANN. § 36.01 (Vernon 1996). Since the State was not alleging *prior convictions*, there was no prohibition against reading the deadly weapon allegation before the beginning of the guilt/innocence phase. This is true even though evidence of the manner and means in which the vehicle in the present case became a deadly weapon was not introduced into evidence until the punishment phase of the trial. The deadly weapon issue was presented to the jury during punishment and was placed in the punishment charge without objection by Appellant. Appellant filed no motion for new trial. Point of error number one is overruled.

■ In his second and third points of error, Appellant complains that the trial court abused its discretion in setting unreasonable conditions of probation, and in ordering restitution for the child of the victim. After the jury recommended probation for Appellant, the trial court ordered a presentence investigation. At the sentencing hearing, the court set the following terms of probation: (1) intensive supervision, (2) 180 days in Gregg County jail in 90 segments of 48 hours each, (3) 12 months in a substance abuse felony punishment facility, (4) 24 months in a community correctional restitution center, (5) restitution for medical care and funeral expenses in the amount of $9,612.99, (6) restitu-

tion to the child of the victim in the amount of $18,656.29, (7) no driving whatsoever for 10 years, (8) 600 hours of community service, (9) electric monitoring for all times that he is not confined, (10) a curfew of 9:45 p.m. until 5:45 a.m. during the term of probation, (11) support of dependent, (12) $50.00 to Crimestoppers, (13) reimbursement to Crime Victim Compensation Fund, (14) probation fees of $40.00 per month, and (15) no good time credit toward any ultimate sentence in the event of a revocation of probation. The Appellant's argument under the second point of error is that the trial judge "maxed out" on the statutorily allowable conditions of probation. He recognizes that no appellate decisions have been found, and we have found none either upholding or overturning the trial court's discretion in setting the terms of probation.

The judge of the court having jurisdiction of the case shall determine the conditions of community supervision. The judge may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant. TEX.CRIM. PROC.CODE ANN. art. 42.12 § 11(a) (Vernon 1996).

■ Trial courts have been given wide discretion in selecting terms and conditions of probation. *Fielder v. State*, 811 S.W.2d 131, 134 (Tex.Cr.App.1991); *Salinas v. State*, 514 S.W.2d 754 (Tex.Cr.App.1974). A specific condition of probation will be found to be invalid if it embraces all three of the following characteristics: (1) it has no relationship to the crime, (2) it relates to conduct that is not in itself criminal, and (3) it forbids or requires conduct that is not reasonably related to future criminality of the defendant or does not serve statutory ends of probation. *Lacy v. State*, 875 S.W.2d 3 (Tex.App.—Tyler 1994, pet. ref'd). However, if the conditions of probation are clear, explicit, and unambiguous so that the probationer understands what is expected of him or her, and if such conditions bear a reasonable relationship to the treatment of the probationer and the protection of the public, the imposition of such conditions of probation will not be disturbed on review. *Tamez v. State*, 534

S.W.2d 686, 691 (Tex.Cr.App.1976); *Macias v. State*, 649 S.W.2d 150, 152 (Tex.App.—El Paso 1983, no pet.).

In this case, Appellant was found guilty of criminally negligent homicide after running a red light at a high rate of speed, and colliding with another car which had the right of way. Alcohol was used that night, but there was some dispute as to who consumed the alcohol before the collision. Appellant's certified driving record showed that he had been placed on probation by the Department of Public Safety due to his status as a habitual violator of the traffic laws. After being placed on probation, Appellant was convicted three times for speeding, and once for running a red light.

Looking at this case in context, the jury assessed punishment and a fine, with all to be probated. A pre-sentence investigation was ordered and offered into evidence at the sentencing hearing. Appellant did not object to anything that was in the pre-sentence investigation report. Due to the deadly weapon allegation in the indictment, the defendant could not have gone to the judge for probation. It was necessary for him to argue for probation to a jury, and his argument was successful. Even if, in their totality, the terms of probation could be considered unreasonable, they are still much preferred to time in the penitentiary. We find the trial court, based upon the above *Lacy* factors, did not abuse its discretion. Point of error number two is overruled.

 In his third point, the Appellant claims that the trial court abused its discretion in setting the terms and conditions of probation by ordering restitution to the victim's child. The record shows that the trial judge ordered restitution based upon the present value of the loss of the mother's wages during the child's minority. As we understand Appellant's argument, Locklear's child was not a "victim" as contemplated under 42.12 of the Texas Code of Criminal Procedure. The State contends, on the other hand, that in a case where the defendant's

criminal act causes a death, the court may order restitution to the deceased's estate, which may be the child of the victim and the beneficiary of her estate. TEX.CRIM. PROC. CODE ANN. art. 42.037(b)(2)(C) (Vernon 1996). In making a determination of whether or not the court had the authority to order restitution for lost income to the six year old son of Locklear during his minority, we are required to harmonize certain provisions of the Texas Code of Criminal Procedure which deal with restitution.[2] Article 42.12 § 11 provides that the judge may impose any reasonable condition that is assigned to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant. Article 42.037(a) states that "[i]n addition to any fine authorized by law, the court that sentences a defendant convicted of an offense may order the defendant to make restitution to *any* victim of the offense." (emphasis added.) Section (b)(2)(C) of that same article allows for reimbursement for "income lost by the victim as a result of the offense." Sections (b)(3) and (b)(4) provide that if the offense results in the death of the victim, the court may order the defendant to make restitution to a person or organization designated by the victim or the estate. Section(c)(4), (d) states that "[i]f a court orders restitution under this article and the victim is deceased, the court shall order the defendant to make restitution to the victim's estate." And section (c)(4), (e) mandates that "the court shall impose an order of restitution that is as fair as possible to the victim." Our reading of the above provisions leads us to the conclusion that a person receiving probation could be ordered to make restitution to the estate of the victim and, consequently, to the beneficiary of that estate. To determine who the beneficiaries of the victim's estate are, we must turn to the Probate Code. Section 38 of the Texas Probate Code provides:

> Where any person, having title to any estate, ... shall die intestate, leaving no husband or wife, it shall descend and pass in parcenary to his kindred, male and female, in the following course:

2. All cited sections are to the Texas Code of Criminal Procedure (Vernon 1996).

1. To his children and their descendants.

TEX. PROB.CODE ANN. § 38 (Vernon 1996). In this case, the court's calculations of restitution were based upon the Texas Family Code's child support guidelines and testimony concerning the deceased's income. According to the evidence presented at the sentencing hearing, the victim was not married at the time of her death, and she had only one child. There was no evidence of a will, and Locklear's son was the sole beneficiary. In *Bruni v. State,* 669 S.W.2d 829 (Tex.App.—Austin 1984, no pet.), the court held that ordering restitution to the wife of the victim was authorized since the money, by law, belonged to both husband and wife. We find that the trial court did not abuse its discretion in ordering the income to be paid to the child of the victim. Appellant's third point is overruled.

Having found no error, the judgment of the trial court is **affirmed**.