**Jamie Lou TYLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–02–01146–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

April 15, 2004.

---

**2.** Faulkner presented a third issue in her initial brief, but withdrew the issue in her reply brief.

## OPINION

JANE BLAND, Justice.

After a bench trial, the trial court convicted appellant Jamie Lou Tyler of felony misapplication of fiduciary property and assessed punishment at confinement for one year, probated for three years. The trial court further ordered that Tyler pay restitution in the amount of $16,177. Tyler contends on appeal that the trial court erred in (1) denying her motion for instructed verdict; (2) violating the ex-post-facto provisions of the United States and Texas constitutions; and (3) ordering restitution to be paid to persons other than the victim alleged in the indictment. We reform the judgment and affirm.

### Facts

Howard and Grace Rogers had five children and many grandchildren. Howard died in February 1995, leaving his estate to Grace. Their son, Michael, helped organize Howard's estate and at that time, Grace held about $48,000 in cash assets. Appellant Tyler married one of the Rogers' grandchildren, Stephen Kadlecek. Grace developed a close relationship with Tyler after the birth of Tyler's daughter, Grace's great-granddaughter. In 1995, Tyler volunteered to assist Grace with her financial affairs.

Miles W. Whittington, Galveston, TX, for Appellant.

Joel H. Bennett, Assistant Criminal District Attorney, Michael J. Guarino, Criminal District Attorney, B. Warren Goodson, Jr., Assistant District Attorney, Galveston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

Grace added Tyler as a signatory on her bank accounts, and executed a durable power of attorney naming Tyler as her "agent (attorney-in-fact)." The power of attorney gave Tyler power over all of Grace's assets. Between February 1995 and June 1997, Tyler withdrew approximately $48,000 from Grace's bank account. Tyler spent some of Grace's money on improvements to Tyler's home, and on loan payments for Tyler's automobiles and

mortgage. In August 1997, Grace revoked the power of attorney, and Michael began again to manage her financial affairs. At that point, Grace's bank account contained less than $150. Grace died before the inception of these criminal proceedings.

## Legal Sufficiency

 Tyler contends that the trial court erred in denying her motion for directed verdict. A challenge on appeal to the denial of a motion for directed verdict is a challenge to the legal sufficiency of the evidence. *Williams v. State,* 937 S.W.2d 479, 482 (Tex.Crim.App.1996). When evaluating the legal sufficiency of the evidence, we should view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App.2003).

Section 32.45 of the Texas Penal Code defines the offense of misapplication of fiduciary property, providing in pertinent part:

> A person commits an offense if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary or property of a financial institution in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held.

Tex. Pen.Code Ann. § 32.45 (Vernon Supp. 2004). Tyler contends the evidence is legally insufficient because the trial court remarked during a hearing on Tyler's motion for directed verdict that Tyler had no formal trustee relationship with Grace, and therefore a fiduciary relationship "may not have" existed. As the law requires the trial court to find that a fiduciary relationship exists in order to find guilt, Tyler

contends that the trial court's observation negates any criminal liability on her part.

Tyler's contention ignores the fact that after closing argument, the trial court found beyond a reasonable doubt that Tyler misappropriated funds belonging to Grace Rogers and that she committed a criminal offense by "knowingly or recklessly misapplying property she held in a fiduciary capacity." The trial court further clarified its finding when it explained that "... those funds were given to her by virtue of that power of attorney, [and] when she deposited them into the Amoco Credit Union and then withdrew them into her own account ... she was acting in a fiduciary capacity and misapplied funds."

The record contains legally sufficient evidence to support the trial court's findings that Tyler acted as a fiduciary and misapplied funds. The power of attorney that Grace executed in April 1995, admitted into evidence, named Tyler as her "agent (attorney-in-fact)." While Tyler served in that capacity, in April 1995, she transferred $4,123.46 from Grace's account to her own personal bank account, and kept $1,000 in cash. In January 1996, she withdrew another $2,663.65 from the bank account, and used the funds to install cabinets in her home on Tiki Island. In February 1996, Tyler transferred $5,400 from Grace's bank account to her own personal bank account. In June and July 1996, Tyler drew checks on Grace's bank account, each in the amount of $942.30, to make monthly payments on auto loans. In July and August 1996, Tyler drew checks on the account, each in the amount of $1,091.10, payable to "Countrywide" for mortgage payments on Tyler's home.

Michael Rogers testified at trial that after Grace revoked Tyler's power of attorney, he assumed responsibility for managing her financial affairs. He testified that during the time period between Feb-

ruary 1995 and June 1997, $48,000 had been removed from Grace's bank account, and that Grace did not have any financial obligations or needs that necessitated $48,000 in withdrawals. While Michael Rogers managed her financial affairs, Grace's living expenses rarely exceeded her monthly income of approximately $1,500. Michael testified that after Grace revoked Tyler's power of attorney, the relationship between Tyler and Grace drastically changed, and that Tyler may have visited Grace once before she died.

Tyler further contends that the evidence is legally insufficient because Grace died before trial, and thus could not testify as to her relationship with Tyler and as to whether some of the funds Tyler withdrew were gifts. The trial court noted that based on the evidence of Mrs. Rogers' income and standard of living, no evidence in the record supported an inference that the transfers from Grace's bank account were gifts. The trial court thus considered this point together with all of the evidence presented at trial and rejected this contention. We hold that there was more than a scintilla of evidence from which a rational trier of fact could infer that Tyler misapplied Mrs. Rogers' property that she held as a fiduciary pursuant to the power of attorney. *Swearingen,* 101 S.W.3d at 95.

### Ex–Post–Facto Application

█ Tyler contends that the trial court violated the ex-post-facto provision of the United States and Texas Constitutions, because she "was prosecuted under a theory that when it occurred was not a criminal act."

The Texas Legislature amended Section 32.45(a)(1)(B) of the Texas Penal Code in 2001 to clarify its definition of fiduciary, enumerating "an attorney-in-fact or agent appointed under a durable power of attor-

ney as provided by Chapter XII, Texas Probate Code" as one type of fiduciary prosecutable under the statute. *See* TEX. PEN.CODE ANN. § 32.45 (Vernon Supp. 2004). Tyler contends that in amending Section 32.45 of the Texas Penal Code, the Legislature criminalized an act that was formerly innocent to perform. *See Collins v. Youngblood,* 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990) (describing ex-post-facto law as "every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action"). *See also Barnes v. State,* 70 S.W.3d 294, 302 (Tex.App.-Fort Worth 2002, pet. ref'd). Tyler contends that because the earlier version of Section 32.45(a) did not specifically enumerate an "attorney-in-fact" or an "agent appointed under a durable power of attorney" within its definition of the term "Fiduciary," her power of attorney for Grace did not establish a fiduciary relationship.

Before the 2001 amendments, Section 32.45(a) provided in pertinent part:

(a) For purposes of this section:

(1) "Fiduciary" includes:

(A) trustee, guardian, administrator, executor, conservator, and receiver;

(B) *any other person acting in a fiduciary capacity,* but not a commercial bailee unless the commercial bailee is a party in a motor fuel sales agreement with a distributor or supplier, as those terms are defined by Section 153.001, Tax Code.

TEX. PEN.CODE ANN. § 32.45 (Vernon Supp. 2000) (emphasis added).

In *Coplin v. State,* 585 S.W.2d 734, 735 (Tex.Crim.App.1979), the Court of Criminal Appeals held that the phrase "any other person acting in a fiduciary capacity" embraces fiduciary relationships not spe-

cifically enumerated in Section 32.45(a)(1)(A).[1]

■■■ Here, Tyler's status as Grace's agent created a fiduciary relationship. Agency is a consensual relationship between two parties where one, the agent, acts on behalf of the other, the principal. *Bhalli v. Methodist Hosp.*, 896 S.W.2d 207, 210 (Tex.App.-Houston [1st Dist.] 1995, writ denied). A fiduciary relationship exists between an agent and a principal. *Mathews v. Sun Oil Co.*, 425 S.W.2d 330, 337 (Tex.1968). An appointment of an attorney-in-fact creates an agency relationship. *Smith v. Lanier*, 998 S.W.2d 324, 334 (Tex.App.-Austin 1999, pet. denied). It is undisputed that Tyler served as Grace's attorney-in-fact, and therefore a fiduciary relationship existed between Tyler and Grace. *See id. See also Mathews*, 425 S.W.2d at 337.

Because the appointment of an attorney-in-fact creates a fiduciary relationship, we hold that section 32.45(a)(1)(B) of the Texas Penal Code applied to Tyler before the amendments. Tyler's conduct as Grace's attorney-in-fact was therefore subject to prosecution at the time these events arose. We therefore conclude that Tyler's conviction does not violate the ex-post-facto provisions of the United States Constitution or the Texas Constitution.

## Restitution

■■■ Tyler contends that the trial court abused its discretion when it ordered that Tyler pay restitution to Grace's heirs. She contends that the heirs named in the trial court's restitution order were not "direct victims" of the offense, and that the record contains no factual basis supporting the restitution award. Restitution prevents unconscionable loss to the party wrongfully deprived of funds, and unjust enrichment to the party wrongfully in receipt of those funds. *See Bailey v. State*, No. 2189–01, 2004 WL 574639, —— S.W.3d —— (Tex.Crim.App. March 24, 2004) (Cochran, J., concurring) (discussing principle of restitution). Challenges to restitution orders are reviewed under an abuse of discretion standard. *Cartwright v. State*, 605 S.W.2d 287, 288–89 (Tex.Crim.App. 1980). An abuse of discretion occurs if the trial court acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990).

■■■ There are three limits on the amount of restitution that a trial court can order. *See Campbell v. State*, 5 S.W.3d 693, 696–97 (Tex.Crim.App.1999). The amount must be just and supported by a factual basis within the loss of the victim. *Id.* The restitution ordered must also be for the offense for which the convicted person is criminally responsible. *Id.* Finally, restitution is proper only for the victim or victims of the offense for which the offender is charged. *Id.*

If, as in this case, the victim is deceased, our Code of Criminal Procedure provides that the trial court shall order the defendant to make restitution to the victim's estate. TEX.CODE CRIM. PROC. ANN. art. 42.037(d) (Vernon Supp.2004).

At trial, Tyler contended that she should not be ordered to make restitution to Grace's heirs, because the beneficiaries of

---

1. In *Coplin,* the defendant contended that his status as a joint-venturer precluded a finding that his conduct violated Section 32.45. Like Tyler, he argued that the definition in Section 32.45(a)(1)(B)—"any other person acting in a fiduciary capacity"—should be narrowly interpreted. The Court of Criminal Appeals rejected this argument, holding that "any other person acting in a fiduciary capacity" embraces fiduciaries not enumerated in Section 32.45(a)(1)(A). *Coplin,* 585 S.W.2d at 735.

her estate are not victims of Tyler's criminal conduct. *See Gonzalez v. State*, 954 S.W.2d 98, 106 (Tex.App.-San Antonio 1997, no pet.) (restitution may be paid only to the victim of the offense). The State contends that Article 42.037(d) authorized the trial court to order Tyler to pay restitution to Grace's estate, and that the trial court's order complied with Article 42.037 because it ordered Tyler to make restitution to the purported *heirs* of the estate.[2] The trial court acknowledged that its restitution order "does sort of go back to heirship which I don't have any right to determine."

We hold that the restitution order in the trial court's judgment is not in accord with article 42.037(d), which requires that restitution be directed to the victim's estate. TEX.CODE CRIM. PROC. ANN. art. 42.037 (Vernon Supp.2004). Although Article 42.037 serves as a vehicle by which the victim's heirs may ultimately receive funds paid as restitution, the trial court had no authority to determine the beneficiaries of the estate on the record before it. Article 42.037 mandates that restitution be directed to the victim's estate, but does not empower the trial court to administer the estate in the context of the criminal proceedings.

This is not a case in which the restitution amount is unsupported by the record. *See Barton v. State*, 21 S.W.3d 287, 290 (Tex.Crim.App.2000) (if amount of restitution unsupported by record, proper proce-

dure is to abate appeal, set aside amount of restitution, and remand case for hearing to determine just amount of restitution). Indeed, the trial court traced the misappropriated funds, and the amount of restitution that the trial court ordered was within the range of evidence offered at trial. *See Swope v. State*, 723 S.W.2d 216, 229 (Tex.App.-Austin 1986), *aff'd*, 805 S.W.2d 442 (Tex.Crim.App.1991) (because amount of restitution ordered equaled sum of money wrongfully transferred, due process requirement that factual basis of restitution award was within record). Nor is this a case in which the trial court intended to award restitution to one not the victim of the offense. *See Lemos v. State*, 27 S.W.3d 42, 49 (Tex.App.-San Antonio 2000, pet. ref'd) (therapeutic service expenses incurred by victim's wife and daughter stricken from restitution order because wife and daughter not victims of offense). Here, Grace had five children and many grandchildren, and the State offered no evidence of probate proceedings, if any, and no evidence as to who could act on behalf of the estate as administrator. Thus, the trial court should have awarded restitution to the estate, as required by the statute, and left any determination of heirship to an appropriate proceeding.[3]

■■■ "An appellate court has the power to correct and reform a trial court judg-

---

**2.** The trial court's restitution order required that Tyler:

> pay to the G.C.C.S.D. $16,177.00 as restitution to the victim. Such restitution shall be paid in installments of $450.00 per month paid each month; Said restitution shall be distributed accordingly: Michael Rogers $4,044.25, Jerome Rogers $4,044.25, Christopher Rogers $4,044.25, Kevin Kadlecek $1,011.06, Sean Kadlecek $1,011.06, Timothy Kadlecek $1,011.06, Noel Kadlecek $1,011.06.

**3.** In *Richardson v. State*, 957 S.W.2d 854, 859 (Tex.App.-Tyler 1997, pet. ref'd), the Tyler Court of Appeals referenced the Probate Code and made a determination based upon the record that the victim's minor son was the estate beneficiary. In this case, however, there are several adult children and many grandchildren, and the determination of the beneficiaries of the estate is not readily apparent. We decline to follow *Richardson*, and believe the better course is for a trial court to order restitution to the estate, as the statute requires.

ment 'to make the record speak the truth when it has the necessary data and information to do so....'" *Nolan v. State,* 39 S.W.3d 697, 698 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (*citing Asberry v. State,* 813 S.W.2d 526, 529 (Tex.App.-Dallas 1991, pet. ref'd)); *see also* TEX.R.APP. P. 43.2(b). This power is not dependent upon the request of a party. *Asberry,* 813 S.W.2d at 529–30. Considering the purpose of restitution, we modify the trial court's judgment to reflect that the restitution ordered be paid directly to Grace's estate. *See* TEX.R.APP. P. 43.2(b) (court of appeals may modify the trial court's judgment and affirm it as modified).

## Conclusion

We conclude that the evidence is legally sufficient to support Tyler's conviction under the then-existing elements of the offense. The trial court therefore did not err in denying Tyler's motion for directed verdict or violate the constitutional prohibition of ex-post-facto laws. We conclude, however, that the restitution should have been awarded to the victim's estate, rather than individual putative heirs. We therefore modify the judgment of the trial court to reflect that restitution be paid to Grace Rogers' estate in accordance with Article 42.037 of the Texas Code of Criminal Procedure, and affirm the judgment as modified.