In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-06-00400-CR

____________


DESMOND JOSEPH MCBRIDE, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the County Criminal Court at Law No. 1

Harris County, Texas

Trial Court Cause No. 1254726





MEMORANDUM OPINION



 A jury convicted appellant, Desmond Joseph McBride, of harassment and
assessed punishment at a fine of $2,000 and 180 days' confinement, which the trial
court suspended for a period of two years of community supervision. The trial
court also ordered appellant to pay $5,000 in restitution as a condition of
community supervision. See Tex. Penal Code Ann. § 42.07(a)(4) (Vernon
2003); Tex. Code Crim. Proc. Ann. art. 42.037 (Vernon Supp. 2007). On
appeal, appellant contends (1) the evidence was factually insufficient to support
appellant's conviction for harassment and (2) there is no factual basis in the record
to support the restitution order. We affirm.

Facts

 Appellant and Holly Huston met at the airport before an overseas trip in
November 2000, and began dating shortly after they returned to the United States.
Though Huston and appellant broke up several times, their dating relationship
ultimately lasted until September 2003, when they agreed to remain friends. 
Before their breakup, Huston and appellant had several arguments and intense
conversations, and Huston had received some unknown late night phone calls and
hang ups. After their breakup, in October 2003, Huston was on a trip in Chicago
when she received two hang up calls in her hotel room. Upon returning to Houston
and notifying appellant that she had been awarded a faculty position at her place of
employment, he sent her congratulatory flowers. Huston felt uncomfortable by this
gesture and asked appellant not to send her anything else. Later, in December of
2003, appellant called Huston at home and asked for permission to visit, at which
point Huston asked appellant to leave her "completely alone" and not to contact
her anymore. Huston also sent appellant an email on December 23 declining a
lunch invitation and stating, "Again, I have asked that you please leave me alone." 
Several days later, on Christmas Eve, in response to receiving four unknown
payphone hang up calls within a 30-minute period, Huston blocked appellant's
home and cell phone numbers. 

 In January 2004, appellant drove to Huston's home and attempted to give
her a gift; Huston refused the gift and again requested that appellant leave her
alone. Also on January 7, Huston wrote appellant an email in which she stated the
following:

 You have reduced this behavior (i.e. calling card and payphone calls),
which I appreciate, but am requesting, in writing, that you eliminate it
all together. When I have told someone REPEATEDLY that what
they are doing is really upsetting, and they then keep doing it, it seems
to me that this person is not really trying to be my friend and/or they
are unable to control themselves.


Huston also called the police to report telephone harassment. The officer who
investigated the telephone harassment incident spoke with appellant by phone and
told him that Huston did not wish to be contacted.

 However, in February, Huston received several other communications from
appellant, including pages, voice mails, e-mails, and e-cards; she also received
several anonymous payphone calls. 

 In April 2004, Huston noticed that appellant showed up at several places she
had discussed with others on the telephone. She also saw him standing in the
walkway near her house and driving back and forth in front of her sister's home
while she was visiting. As a result, Huston attempted, unsuccessfully, to obtain a
Protective Order against appellant. However, the District Attorney's office did
send a letter to appellant's address asking that he stop contacting Huston. Huston
also hired a private investigator to conduct a threat assessment. On the advice of
that private investigator, Huston unblocked appellant's phone number, and after
receiving a phone call from him within 90 minutes of doing so, Huston began to
record any calls originating from the appellant. Huston was able to record six such
phone calls between June 18, 2004 and August 16, 2004. Due to these phone calls,
appellant was arrested on August 27, 2004 and convicted of harassment. During
trial, Huston testified that appellant's actions were "mentally and emotionally"
disruptive and caused her to miss work; during sentencing, Huston estimated that
she paid the private investigator between $4,000-5,000 and spent approximately
$150 on other "out of pocket" expenses, such as Mace and door lock changes.Factual Sufficiency

 In his first point of error, appellant contends that the evidence presented at
trial was factually insufficient to prove that he caused Holly Huston's telephone to
ring repeatedly with the intent, and in a manner reasonably likely to harass, annoy,
alarm, abuse, torment, embarrass, or offend her. See Tex. Penal Code Ann. §
42.07(a)(4) (Vernon 2003). Specifically, appellant argues that six calls during a
two-month period is insufficient to show that he intended to harass Huston,
particularly in light of the innocuous content of the calls. (1)

Standard of Review

 In a factual sufficiency review, we view all the evidence in a neutral light,
both for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that
the verdict seems "clearly wrong and manifestly unjust," or the proof of guilt,
although legally sufficient, is nevertheless against the great weight and
preponderance of the evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex.
Crim. App. 2006). We cannot conclude that a conviction is "clearly wrong" or
"manifestly unjust" simply because, on the quantum of evidence admitted, we
would have voted to acquit had we been on the jury. Id. at 417. Nor can we
declare that a conflict in the evidence justifies a new trial simply because we
disagree with the jury's resolution of that conflict. Id. We note that a jury is in the
best position to evaluate the credibility of witnesses, and we afford "due
deference" to the jury's determinations. Marshall v. State, 210 S.W.3d 618, 625
(Tex. Crim. App. 2006). 

Harassment

 Appellant contends that there was factually insufficient evidence for a jury
to conclude that he was guilty of the harassment of Holly Huston because (1) he
did not act with the intent to harass or annoy her by calling her, and (2) six
telephone calls over a two-month period is insufficient to rise to the level of
"repeated" as required by the statute.

 The indictment alleged that appellant committed the offense of harassment
pursuant to section 42.07 of the Penal Code. See Tex. Penal Code Ann. §
42.07(a)(4). Accordingly, for the jury to find the appellant guilty, the State had to
prove that the appellant acted intentionally, in a manner reasonably likely to harass,
annoy, alarm, abuse, torment, embarrass, or offend Holly Huston, by causing her
telephone to ring repeatedly. See id.; Blount v. State, 961 S.W.2d 282, 284 (Tex.
App.--Houston [1st Dist.] 1997, pet ref'd). 

 Intent to harass

 A person acts "intentionally" if it is that person's conscious objective or
desire to engage in the conduct or cause the result. See Tex. Penal Code Ann. §
6.03(a) (Vernon 2003). Because the intent of the accused may be inferred from
circumstantial evidence, Blount, 961 S.W.2d at 284 (quoting Wolfe v. State, 917
S.W.2d 270, 275 (Tex. Crim. App. 1996)), intent may be determined from the
accused's words, actions, and conduct. Blount, 961 S.W.2d at 284 (citing Price v.
State, 410 S.W.2d 778, 780(Tex. Crim. App. 1967)).

 The evidence, viewed in a neutral light, is factually sufficient to show that
appellant intended to harass Huston. Huston testified in court that, before July
2004, she received multiple gifts, pages, cards, emails and phone calls from
appellant. She further testified that, before July 2004, she repeatedly asked
appellant by phone and by email not to contact her, blocked his home and cell
phone numbers, tried to get a protective order, and hired a private investigator. A
Houston Police Officer testified that he spoke with appellant and told him that
Huston did not wish to be contacted. A caseworker at the District Attorney's
office testified that she sent a letter to appellant's address asking that he stop
contacting Huston. Appellant did not deny making the six calls between July and
August 2004. Appellant claimed, however, that he did not recall receiving some of
the notices that Huston wanted him to stop contacting her, that he wanted to
maintain a friendship with Huston and that, because he cared for her, he did not
have any ill intent in calling her. Thus, appellant contends, Huston's taking
offense at the phone calls is not objectively reasonable.

 Because the jury was free to believe all, some, or none of the testimony
presented, it could have accepted the testimony from Huston and other state
witnesses and disregarded any inconsistent evidence by appellant. See Chambers
v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); Perez v. State, 113 S.W.3d
819, 839 (Tex. Crim. App. 2003). Based on appellant's repeated disregard for
Huston's requests to stop calling, as well as warnings from the police and the
district attorney's office, the jury could have rationally concluded that appellant
intended the calls to harass, annoy, alarm, abuse, torment, embarrass, or offend
Huston, and that an objectively reasonable person would feel so harassed. See
Blount, 961 S.W.2d at 284. In fact, Huston notified appellant in her January 7
email that his actions were upsetting her and that she did not believe he was just
trying to be her friend. Although appellant denied any ill intent, the jury was
entitled to his disbelieve his testimony. That the jury chose to believe Huston's
testimony concerning appellant's actions, words, and conduct, over the testimony
of the appellant himself, and concluded that appellant intended to annoy or harass
Huston does not indicate that the evidence was so weak as to render the verdict
clearly wrong and manifestly unjust or against the great weight and preponderance
of the evidence. See Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).



 Repeated telephone calls

 Nor does the fact that appellant made only six calls render the evidence
factually insufficient. In Blount v. State, the court found a victim's testimony and
two recorded messages to be sufficient in showing that the defendant made
repeated phone calls to the victim when the victim testified that he had asked the
defendant to stop calling. Blount, 961 S.W.2d at 285. Thus, the jury could
reasonably have found that Huston's testimony and six recorded messages showed
that appellant made "repeated" phone calls to Huston after she had repeatedly
asked him to refrain from contacting her. See id. 

 We overrule appellant's first point of error.

Restitution


 In his second point of error, appellant contends that the trial court abused its
discretion by ordering him to pay $5000 in restitution as a condition of his
community supervision. Specifically, appellant asserts that there is no factual basis
to support the award.

 Although appellant frames his issue as one of factual sufficiency, we review
the trial court's imposition of restitution for an abuse of discretion. See Campbell
v. State, 5 S.W.3d 693, 696 (Tex. Crim. App. 1999) ("An abuse of discretion by
the trial court in setting the amount of restitution will implicate due-process
considerations."); Cartwright v. State, 605 S.W.2d 287, 289 (Tex. Crim. App.
1980); Tyler v. State, 137 S.W.3d 261, 266 (Tex. App.--Houston [1st Dist.] 2004,
no pet.). An abuse of discretion occurs if the trial court acts without reference to
any guiding rules and principles or acts arbitrarily or unreasonably. Montgomery
v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

 Texas law provides three limits on the amount of restitution a trial court can
order. See Campbell, 5 S.W.3d at 696-97; Tyler, 137 S.W.3d at 266. The amount
must be just and supported by a factual basis within the loss of the complainant.
Campbell, 5 S.W.3d at 696-97; Tyler, 137 S.W.3d at 266. The restitution ordered
must also be for an offense for which the convicted person is criminally
responsible. Campbell, 5 S.W.3d at 697; Tyler, 137 S.W.3d at 266. Finally,
restitution is proper only for the victim or victims of the offense for which the
offender is charged. Campbell, 5 S.W.3d at 697; Tyler, 137 S.W.3d at 266. The
prosecution has the burden of proving the amount of loss sustained by the victims
of a crime by a preponderance of the evidence, for the purpose of factually
supporting a restitution order. Tex. Code Crim. Proc. Ann. art. 42.037(k)
(Vernon Supp. 2007). 

 Huston presented evidence at the guilt-innocence phase of the trial, which
was reintroduced during the punishment phase, that she hired Don Malone, a
private investigator, to assist her in dealing with appellant. She also testified that
she had to take off approximately two weeks of work as a result of appellant's
harassment of her, and changed her locks and bought mace. Don Malone testified
that Huston hired him to conduct a threat assessment. Malone testified that Huston
paid him for his services. He further testified that he had worked on the case for
"close to a hundred" hours, but that he had billed "less than twenty." At the
punishment phase of the trial, Huston testified that she had paid Malone "four or
five thousand dollars" and had spent "around a hundred and fifty" dollars for
"mace, locks, and so forth." Appellant did not cross-examine Huston or Malone
about the value of Malone's services or Huston's expenses and provided no
evidence controverting their testimony.

 Appellant argues that the $5,000 restitution award is not just because it is
insufficiently supported by a factual basis in the record. Appellant points out that
there is no documentation of Malone's hourly rate and no receipts to corroborate
Huston's testimony, which was inexact.

 Testimony from a witness like Huston, with personal knowledge of the
amount of expenses incurred, is adequate to support a restitution order. See Burris
v. State, 172 S.W.3d 75, 78 (Tex. App.--Fort Worth 2005, no pet.); Maloy v. State,
990 S.W.2d 442, 444-45 (Tex. App.--Waco 1999, no pet.). Based on the
evidence that Huston hired Malone and paid him between four and five thousand
dollars, that she missed approximately two weeks of work, and that she spent
approximately $150 in changing her locks and buying mace, we cannot say the trial
court abused its discretion in setting restitution at $5000, or that the amount of
restitution was not "just."

 We overrule point of error two.

Conclusion


 We affirm the judgment of the trial court.



 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Do not publish. Tex. R. App. P. 47.2(b)


1. The transcripts of the six telephone calls shows that appellant made no overt threats
during the calls. In one call appellant tells Huston of a car accident he was in; in one call he
is "just calling to see how you are"; in one call he reminds Huston that a certain television
show is coming on, in another call he invites her to lunch and hopes that she'll "let bygones
be bygones and just be friends"; and in two calls appellant claims to have dialed a wrong
number.