**AFFIRMED as Modified; Opinion Filed April 21, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-13-00109-CR

No. 05-13-00110-CR

No. 05-13-00111-CR

**DAVID LYNN GREGG, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F12-53040-Q, F12-51712-Q, and F11-27717-Q**

## MEMORANDUM OPINION
Before Justices O'Neill, Myers, and Brown
Opinion by Justice Myers

Appellant David Lynn Gregg was charged via separate indictments with possession of a prohibited weapon offense[1] and two unauthorized use of a motor vehicle offenses.[2] He pleaded guilty to the three indictments and received a three-year term of deferred-adjudication community supervision for the unauthorized use of a motor vehicle offense in 05–13–00110–CR, a three-year term of deferred-adjudication community supervision and a $1,500 fine for the unauthorized use of a motor vehicle offense in 05–13–00111–CR, and a five-year term of deferred-adjudication community supervision and a $2,000 fine for the possession of a

---

[1] Appeal number 05–13–00109–CR (trial court cause number F12–53040–Q).

[2] Appeal numbers 05–13–00110–CR and 05–13–00111–CR (trial court cause numbers F12–51712–Q and F11–27717–Q).

prohibited weapon offense.

The State subsequently filed a motion to proceed with an adjudication of guilt in each of the three cases—based, in part, on a new charge of unauthorized use of a motor vehicle. Appellant pleaded not true to the allegations in the State's motions and entered a plea of not guilty to the new indictment. After hearing the evidence, the trial court found that the State had not proven the allegations in the indictment beyond a reasonable doubt and rendered a not guilty verdict in that case. The court, however, found that the State had met its burden of proof on the motion to adjudicate in each of appellant's previous cases, and found the allegations in the motions to be true. After revoking appellant's community supervision and adjudicating his guilt in each of the cases, the court sentenced him to two years in state jail for each of the convictions for unauthorized use of a motor vehicle and five years' imprisonment for possession of a prohibited weapon.[3] In this appeal, appellant argues the trial court abused its discretion by revoking community supervision and proceeding with an adjudication of guilt. As modified, we affirm the trial court's judgments.

## DISCUSSION

In his issue, appellant argues the trial court abused its discretion by revoking community supervision and proceeding with an adjudication of guilt in all three cases because the revocation was based on grounds not alleged in the State's motions.

We review the trial court's decision to revoke community supervision for an abuse of discretion, taking into account the sufficiency of the evidence supporting the basis for revocation. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). "The State must prove at a revocation hearing that the defendant is the same individual as is reflected in the judgment and order of probation, and that

---

[3] All of these sentences were ordered to run concurrently.

the individual violated a term of probation as alleged in the motion to revoke." *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993); *see Cherry v. State*, 215 S.W.3d 917, 919 (Tex. App.—Fort Worth 2007, pet. ref'd). Probation may not be revoked upon a finding of any violation of any probationary condition other than that alleged in the motion to revoke or necessarily included within the allegations contained in the motion. *Caddell v. State*, 605 S.W.2d 275, 277 (Tex. Crim. App. 1980); *Pickett v. State*, 542 S.W.2d 868, 870 (Tex. Crim. App. 1976).

"The burden of proof at a probation revocation hearing is by a preponderance of the evidence." *Cobb*, 851 S.W.2d at 874; *see Hacker*, 389 S.W.3d at 864–65; *Little v. State*, 376 S.W.3d 217, 219 (Tex. App.—Fort Worth 2012, pet. ref'd). "In the probation-revocation context, 'a preponderance of the evidence' means 'that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation.'" *Hacker*, 389 S.W.3d at 865 (quoting *Rickels*, 202 S.W.3d at 764).

In a community supervision revocation proceeding, the trial court is the trier of fact and the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Hacker*, 389 S.W.3d at 865. We review the evidence in the light most favorable to the court's ruling. *Cherry*, 215 S.W.3d at 919. If the State fails to meet its burden of proof, the trial court abuses its discretion by revoking the community supervision. *Id.* (citing *Cardona v. State*, 665 S.W.2d 492, 493–94 (Tex. Crim. App. 1984). Proof by a preponderance of the evidence of any one of the alleged violations of the conditions of community supervision is sufficient to support a revocation order. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980).

A revocation hearing is not a criminal prosecution and the degree of proof required to establish the truth of the allegation in a motion to revoke community supervision is not the same.

*Hacker*, 389 S.W.3d at 864–65; *Black v. State*, 411 S.W.3d 25, 30 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Canseco v. State*, 199 S.W.3d 437, 438 (Tex. App. —Houston [1st Dist.] 2006, pet. ref'd). A defendant may be acquitted of a criminal offense and still have his community supervision revoked based on the same act because the standard of proof in a revocation proceeding is proof by a preponderance of the evidence, rather than beyond a reasonable doubt, as in a criminal trial. *See Polk v. State*, 729 S.W.2d 749, 750 n.1 (Tex. Crim. App. 1987) ("[A]n acquittal in a criminal prosecution will not necessarily mandate a finding of 'not true' to a motion to revoke alleging commission of the identical offense, since the standard of proof in a revocation proceeding is proof by a preponderance, rather than beyond a reasonable doubt, as in a criminal trial."); *Black*, 411 S.W.3d at 30 (defendant's acquittal of possession of marijuana charge following revocation of community supervision based on same act, without more, did not establish that revocation was an abuse of discretion); *see also Ex parte Lane*, 806 S.W.2d 336, 339 (Tex. App.—Fort Worth 1991, no writ) ("[A]n acquittal of a charged offense would not bar a subsequent revocation of probation based on the same allegation.").

The State's motions to proceed with an adjudication of guilt each alleged that appellant violated a condition of his community supervision by violating the laws of the State of Texas "in that on or about 9/25/12 in Dallas County, Texas," he committed the offense of unauthorized use of a motor vehicle.[4] *See* TEX. PENAL CODE ANN. § 31.07. An individual commits this offense "if he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner." *Id*. Thus, the State was required to show not only that appellant intentionally or knowingly operated the vehicle but that he knew he did not have the owner's consent. *McQueen v. State*, 781 S.W.2d 600, 604 (Tex. Crim. App. 1989).

---

[4] Each motion alleged three additional violations based on appellant's failure to pay ordered court costs and fines, community supervision fees, and a Crime Stoppers payment. These allegations were abandoned by the State after the start of the adjudication hearing.

Testimony that the owner did not give consent to operate his vehicle can be sufficient to support a finding that an appellant knew he did not have consent to operate the vehicle. *Id.* at 604–605. When an appellant asserts a mistake-of-fact defense concerning the circumstances surrounding the operation of a vehicle, the fact finder is free to reject the evidence. *Id.*; *see also Hacker*, 389 S.W.3d at 865 (trier of fact is the sole judge of the credibility of witnesses and weight to be given to their testimony at a revocation hearing).

Here, appellant does not dispute that he intentionally or knowingly operated the vehicle. He argues, however, that the State failed to prove he knew he did not have the owner's consent because the evidence showed that appellant thought *he* was the vehicle's owner, and that he had lawfully purchased the vehicle from another individual.

The evidence presented at the hearing showed that on the morning of September 24, 2012, in the Pleasant Grove area of Dallas, Texas, Armando Bruciaga was getting ready to leave for work. As usual, he put his drinks for the day in his 1994 Nissan Sentra and returned to his house to gather the rest of his belongings before leaving for work. About ten minutes later, at around 6:30 a.m., he went outside to find his car had been stolen. Bruciaga's keys were not in the ignition, but he had a spare key located in the glove compartment. He testified that he did not give anyone permission to use his car.

On the following day, September 25, at around 7:32 p.m., Balch Springs Police Officer James Young was on patrol on Hickory Street when he saw a Nissan Sentra. The officer got behind the vehicle and was about to perform a standard computer check for insurance and registration when he saw it pull into a driveway on Hickory Street without signaling. Young initiated a traffic stop. As he was walking up to the vehicle, the officer heard the occupant, later identified as appellant, say, "[I]t's not my car; I borrowed it." Dispatch informed the officer that the car was stolen. He confirmed the VIN number of the vehicle and contacted the owner,

–5–

Bruciaga, after which appellant was placed in custody and taken to the police department.

Appellant testified that on September 25, 2013, he received a telephone call from an old acquaintance, Christopher Hafley, that appellant had known "in my past when I was messing up." Hafley told appellant that he had heard appellant was looking to purchase a car, and that he had a 1994 Nissan Sentra that was for sale. Hafley asked appellant to meet him at a Waffle House restaurant located on Highway 635 and Military in Dallas, Texas. Appellant's cousin, Amanda, drove him to the Waffle House parking lot, where Hafley was waiting. Appellant spoke briefly with Hafley in the parking lot, after which Hafley followed appellant and Amanda to the parking lot of Amanda's apartment complex. After Amanda dropped appellant off in her apartment complex's parking lot, he and Hafley talked about the vehicle. Appellant testified that Hafley told him he had gotten the car from Hafley's brother. They eventually reached an agreement regarding the purchase price. Appellant, however, wanted to test-drive the car before buying it, so he drove the car through Balch Springs, eventually reaching Hafley's residence. When they pulled up to the residence, appellant gave Hafley $250 and Hafley wrote the following statement on a sheet of notebook paper: "I Christopher Hafley, has sold David Gregg this vehicle for $250 bucks." Appellant put the paper in between the seat and the console. Appellant then drove to the residence of his ex-girlfriend, Brandy, in the Nissan Sentra. He was stopped by the police as he pulled in her driveway. When Young walked up to the car, appellant testified that he told the officer, "I just got this car from my friend; I bought it." Appellant also testified, "I guess he misunderstood it and couldn't hear me."

Amanda Pickeral, appellant's cousin, testified that she drove him to the Waffle House restaurant to buy a car, and then watched from her car as he talked to Hafley. She saw two men talking and "filling something out on the hood" of the Nissan, but was "not for sure" because she remained in her car. With Hafley following them, she drove appellant back to her apartment

complex and dropped him off there.

As appellant acknowledged during his testimony, he was suspicious of the vehicle's legitimacy. Appellant testified that he knew Hafley had a criminal record. Hafley could not produce a title to the vehicle. In addition, the asking price was suspiciously low for a vehicle that, although an older model, was in good working order:

> Q. [DEFENSE COUNSEL:] Now—now, a '94 Nissan, that's not exactly the most expensive car, but didn't you find $300 was a little light to pay for a vehicle like that in working order?
>
> A. Yeah.
>
> THE COURT: Especially, since y'all are on probation for unauthorized use of motor vehicle.
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: It seems like you'd be extra careful not to be caught with a hot car—
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: —right?
>
> Q. [DEFENSE COUNSEL:] Something kind of fishy smelling here?
>
> A. That's why I kept asking Christopher Hafley, are you sure the car's legit? And he went like this, he said, yes. The only reason I'm selling it to you for— like, so less, is because it's damaged.

Appellant stated that one of the reasons he thought the vehicle "was legit" was that he test-drove it in Balch Springs during the day on September 25, 2013 without incident—including when he visited a friend's apartment and a police cruiser drove through the parking lot, "pulled in behind us," then "took off." The record includes the following exchange:

> THE COURT: So this whole time you were thinking, I don't know if this is a legit deal, but since the cops didn't pull me over, I must be okay? Is that what you're saying?
>
> THE DEFENDANT: Yes, ma'am.

Q. [DEFENSE COUNSEL:] So you got that, and you got the fact that the keys are there, correct?

A. Yes. And that——

Q. So that's on the side of your brain, saying, this is—this is a good purchase, correct?

A. Yeah.

Q. On the other side, you got the fact that—and you know that Mr. Hafley is like a three-time loser, correct?

A. Yes, sir.

Q. Okay. So you're, like—you really don't believe everything he has to say. We're just laying it out on the table, okay?

A. Yes, sir.

THE COURT: And you know you're not supposed to be hanging out with Mr. Hafley, right?

THE DEFENDANT: That's the first time I seen him. I know I ain't supposed to have been around him, but I was just—

THE COURT: You thought that it would be a good idea to meet with some guy that's got a criminal history, even though you're on probation, and I've told you not to hang around people—with people that commit crimes?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you say, instead, you needed a car and it was such a good deal, 200 bucks; is that right?

THE DEFENDANT: 250.

THE COURT: 250. And you're familiar with cars, right?

THE DEFENDANT: Yes, ma'am.

THE COURT: Yeah, you're real familiar with cars. And didn't that money make you think, I don't know, he probably stole it from somewhere, since he is a criminal and a thief and I'm pretty good at knowing when a car is stolen or not because I've kinda done it myself, right?

THE DEFENDANT: Yes, ma'am.

Moreover, when Young approached the car immediately following the traffic stop, appellant

never mentioned the receipt from Hafley that allegedly showed he had just purchased the car, telling Young, according to the officer's testimony, that it was not his car and that he "borrowed it."

The trial court cited appellant's testimony at the hearing to conclude he probably knew the vehicle was stolen:

> Well, while it is true that the evidence is strong against him in the new case, the evidence is also strong that Mr. Craig—Mr. Gregg probably isn't the brightest person. And he, himself, told me that he thought it was probably stolen, but it wasn't for sure. So I'm going to find him not guilty on the new case, but I'm going to find the allegations in the State's motions all to be true, because he probably knew it was stolen. And that's just based on his testimony. So that's clear.

As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court was responsible for evaluating the credibility of the witnesses at the hearing and reconciling conflicts in their testimony. It was free to reject appellant's testimony that, despite his doubts regarding the car's legitimacy, he believed Hafley had legally acquired it from his brother "for a cheap price." *See Hacker*, 389 S.W.3d at 865. Viewing the evidence in this case, together with reasonable inferences drawn therefrom, in the light most favorable to the trial court's ruling, we conclude the greater weight of credible evidence before the court supports the trial court's reasonable belief that it is more probable than not that appellant violated a condition of community supervision by the unauthorized use of a motor vehicle. Therefore, the trial court did not abuse its discretion by revoking appellant's community supervision and adjudicating his guilt. We overrule appellant's issue.

### Modification of Judgment in 05–13–00109–CR

In cause number 05–13–00109–CR, the trial court's judgment states that appellant pleaded true to the allegations in the State's motion to proceed with an adjudication of guilt. The record, however, shows that appellant pleaded not true to the allegations in the State's motion.

–9–

Because the necessary information is available in the record, on our own motion we modify the trial court's judgment in 05–13–00109–CR to show that appellant pleaded not true to the allegations in the State's motion. *See* TEX. R. APP. P. 43.2(b); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (providing that an appellate court has the authority to modify incorrect judgments sua sponte when the necessary information is available to do so); *see also Tyler v. State*, 137 S.W.3d 261, 267–68 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (authority to modify judgment is not dependent upon a party's request).

As modified, we affirm the trial court's judgments.


/Lana Myers/
LANA MYERS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
130109F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID LYNN GREGG, Appellant

No. 05-13-00109-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F12-53040-Q.
Opinion delivered by Justice Myers.
Justices O'Neill and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Plea to Motion to Adjudicate:  TRUE" should be changed to "Plea to Motion to Adjudicate:  NOT TRUE."

As **REFORMED**, the judgment is **AFFIRMED**.  We direct the trial court to enter a new judgment that reflects this modification.

Judgment entered this 21st day of April, 2014.


/Lana Myers/
LANA MYERS
JUSTICE

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID LYNN GREGG, Appellant

No. 05-13-00110-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F12-51712-Q.
Opinion delivered by Justice Myers.
Justices O'Neill and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 21st day of April, 2014.

/Lana Myers/

LANA MYERS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID LYNN GREGG, Appellant

No. 05-13-00111-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F11-27717-Q.
Opinion delivered by Justice Myers.
Justices O'Neill and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 21st day of April, 2014.

/Lana Myers/
LANA MYERS
JUSTICE

–13–